## FARMVILLE OIL AND FERTILIZER COMPANY, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67600. Promulgated June 26, 1934.

*W. F. Evans, Esq.*, for the petitioner.
*Samuel L. Young, Esq.*, for the respondent.

OPINION.

STERNHAGEN: The petitioner, having for the fiscal year ended July 31, 1930, charged to "fertilizer discount account" and credited to "reserve for inactive contingencies" $21,545.42, which it deducted on its tax return, used this amount as a reduction of gross sales in arriving at the gross income shown upon its return. The Commis-

sioner in effect disallowed $20,859.70 of this amount and restored so much to gross income. Strictly speaking, therefore, the disallowance of the Commissioner is not of a statutory deduction. The petitioner, however, in assailing the Commissioner's determination argues that the amount in controversy is properly a statutory deduction of either an addition to its reserve for bad debts or to its reserve for inactive contingencies, or partly both.

That a reserve for inactive contingencies such as possible repayments, price discounts, or price rebates, the amounts of which have not been fixed or were not fairly susceptible of ascertainment prior to the end of the taxable year in question, is not the basis of a statutory deduction has now become a settled doctrine. *Brown* v. *Helvering*, 291 U.S. 193. This general doctrine includes the disallowance of unascertained price discounts, for the Supreme Court expressly disapproved *Virginia Lincoln Furniture Corp.* v. *Commissioner*, 56 Fed. (2d) 1028, which held to the contrary. Thus, by its title alone the reserve for inactive contingencies, reflecting as it did " fertilizer discounts " would be no basis for the deduction claimed.

The petitioner argues that, of the amount originally deducted, some part (said without supporting evidence to be $16,292.72) was an additional reserve for bad debts. Since the evidence fails to support this as a proper accounting classification and since also the amount of the allocation of such part is without supporting evidence, the petitioner must fail. The method of accounting for bad debts through a reserve does not found an absolute right in the taxpayer, for the statute expressly sanctions the Commissioner's discretion. Cf. *C. P. Ford & Co.*, 28 B.T.A. 156. Here the Commissioner's determination has clearly not been arbitrary or capricious. The taxpayer has been permitted during the preceding years to make substantial increases in the ratio of its bad debt reserve to its receivables. First, it had established this ratio at an amount varying between 6 and 8 percent. Later this was increased to 12 percent. In the taxable year 1930, that now in question, the taxpayer was permitted to add a further $64,405.44, arrived at by its own estimate at the end of the taxable year of the collectibility of specific accounts. Apparently when this permissive increase was allowed by the Commissioner it was not suggested that the reserve for inactive contingencies might include any further reserve for bad debts. But the petitioner, after the end of the taxable year and after its return was filed, discovered that its collections would be even less than the amount contemplated when the return was filed. In this proceeding it sought by the evidence of actual subsequent collections to establish the propriety of treating its reserve for inactive contingencies as an additional reserve for bad debts. This we think is contrary to the intendment of the statute and

the regulations. While a bad debt reserve may and properly should be permitted to fluctuate from time to time in accordance with actual experience and well founded prophecy, cf. *Rhode Island Hospital Trust* v. *Commissioner*, 29 Fed. (2d) 339, the amount of the addition must be fixed at the approximate end of the taxable year. There is no support for the view that such a reserve may later be retroactively enlarged because the subsequent realization upon the debts has proved to be less than the estimate made at the close of the year. Such an unexpected development should be taken care of by the taxpayer, either by an enlargement of the subsequent annual additions to the reserve or by doing as this taxpayer did in 1932, giving up the reserve method entirely and deducting the debts as they are ascertained to be worthless and charged off.

*Judgment will be entered for the respondent.*