## CLARK v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5851.

Circuit Court of Appeals, Third Circuit.

Aug. 21, 1936.

Robert P. Smith and Arthur H. Deibert, both of Washington, D. C., for appellant.

Frank J. Wideman, Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., and A. L. Jacobs and John G. Remey, both of Washington, D. C., for appellee.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

This case is an appeal from a decision of the Board of Tax Appeals which found that the petitioner was liable, in the amount of $1,434.13, on an alleged deficiency in income tax for the calendar year 1926. The finding of a deficiency was based upon the ruling by the board disallowing the deduction of $18,185.34 in the petitioner's income tax return as a loss on a partially bad debt. The redetermination of the board sustained the commissioner.

On May 4, 1925, the petitioner and his brother each loaned $80,500 to the Monroe Corporation, a corporation newly formed by W. R. and C. S. Monroe, to purchase the assets of the Monroe Manufacturing Company which was in the hands of receivers. The Monroe Corporation, after purchasing the assets, issued forty promissory notes to the petitioner and his brother, H. E. Clark, totaling $200,000 at 6 per cent. interest secured by a first mortgage upon all of the assets, and gave the notes and 500 shares of stock of the Monroe Corporation each to the petitioner and his brother as consideration for the loan. The excess of $39,000 over and above the $161,000 loaned and the 500 shares of stock each to the petitioner and his brother was considered as a bonus. The notes which matured at the rate of $5,000 per month were indorsed by W. R. and C. S. Monroe. W. R. Monroe had been the president and sole stockholder of the Monroe Manufacturing Company and now owned the other 50 per cent., or 1,000 shares, of the common stock of the Monroe Corporation which had been issued to him. He assigned this stock to the petitioner and his brother as additional security. The mortgage which secured this $161,000 loan was subject to a prior lien of $10,000. The petitioner became the treasurer and a director of the Monroe Corporation and as such was fully informed, by weekly and monthly reports, of the condition of the business.

Though payments amounting to $51,-887.96 had been made on these notes by assignment of bills due the corporation, the payments were so irregular, and of such varying amounts, that the mortgage was in default from the very beginning. The petitioner received one-half of these payments, or $25,943.98. The business was operated at a continual loss. By the end of 1925 a deficit of $13,486.53 was shown, and during 1926 the books evidence a loss of $51,132.41. Thus by the end of 1926 the business was in a very bad financial condition.

The petitioner talked with his brother, who supplied to a large extent the raw materials used by the corporation, about putting the business into the hands of receivers, but his brother did not care to force a collapse upon the corporation. The petitioner investigated the financial condition of W. R. and C. S. Monroe, the indorsers, and found that the indorsements were absolutely worthless.

In February, 1926, the petitioner entered into an optional agreement for the sale of the 500 shares of stock, which he had received as a bonus, for $52,500. He received on this sale only $2,250. This he entered in his income tax return as of that year. It was a separate transaction and does not affect the decision in this case.

In September of 1926, the petitioner resigned as an officer of the corporation. In February, 1927, another creditor of the cor-

poration forced it into the hands of receivers, and on June 1, 1927, the court ordered a sale of the assets of the Monroe Corporation "free, clear and divested of all liens," and further provided that: "In the event that H. E. Clark and S. L. Clark, the mortgagees named in the foregoing petition, or their assigns, shall become the purchaser of said real estate, such mortgagees or their assigns shall be permitted upon payment of the down money as herein provided, to pay the balance of the purchase money by giving to the receivers their non-negotiable note for the amount thereof, payable on the final determination, by a court of competent jurisdiction, of the amount owing upon the mortgage of said H. E. Clark and S. L. Clark, described in the foregoing petition, by crediting against said note any amount or amounts ultimately determined by a court of competent jurisdiction to be owing upon said mortgage, and the balance, if any, in cash; and upon such other terms and conditions not inconsistent herewith as the receivers may prescribe."

The sale which was open to competitive bidding took place on July 9, 1927. · H. E. Clark, acting for the petitioner and himself, purchased the real property of the company which in 1926 had a book value of over $125,000, for $15,000, and acting on his own behalf, purchased the personal property which in 1926 had a book value of over $100,000 for $9,500. In connection with the purchase of the real property $13,500 was paid into court. This money was used for the payment of other liens and costs, and no part of it was distributed by the receiver to the petitioner or his brother.

The petitioner in his income tax return for 1926 deducted from his net income the sum of $18,185.34. As above stated, this case arises out of the refusal to allow this deduction. This represented one-third of the debt still due him on the loan of $80,500. He testified that .he considered this a conservative estimate of the loss which he would sustain on the loan. In 1927 he deducted the remaining two-thirds due him. This latter deduction was sustained by the Board of Tax Appeals and is not in dispute in the present case.

Section 214 (a) of the Revenue Act of 1926, 44 Stat. 26, which governs this problem, reads as follows:

"In computing net income there shall be allowed as deductions: * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in trade or business;

"(5) Losses sustained during the taxable year and not compensated for by insurance or otherwise, if incurred in any transaction entered into for a profit, though not connected with the trade or business; * * *

"(7) Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part."

Treasury Regulations 69, promulgated under the Revenue Act of 1926, reads as follows:

"Article 151. Bad Debts.—Bad debts may be treated in either of two ways—

"(1) By a deduction from income in respect of debts ascertained to be worthless in whole or in part, or

"(2) By deduction from income of an addition to a reserve for bad debts."

The commissioner, as an administrative agent of the government, has been given broad powers of discretion in making determinations of this nature, and his determination, especially where it has been sustained by the Board of Tax Appeals, is entitled to great consideration. A court, sitting in an appellate capacity, should not reverse the decision of the board unless it is not supported by the evidence in the case. Stranahan v. Commissioner (C.C.A.) 42 F. (2d) 729, certiorari denied 283 U.S. 822, 51 S.Ct. 346, 75 L.Ed. 1437; Olympia Harbor Lumber Company v. Commissioner (C.C. A.) 79 F.(2d) 394. However, taxation is a very practical thing. A taxpayer is expected to be reasonable and honest, but the taxing act does not require him to be an incorrigible optimist. United States v. S. S. White Dental Manufacturing Co., 274 U.S. 398, 403, 47 S.Ct. 598, 71 L.Ed. 1120. Neither should he be "unduly pessimistic" when claiming deductions for bad debts. He "must make a reasonable investigation of the facts and draw a reasonable inference from the information thus obtainable." Sherman & Bryan v. Blair (C.C.A.) 35 F.(2d) 713, 715.

The taxpayer was not too pessimistic. He investigated the value of the indorsements, and his close connection with the

business as treasurer gave him the necessary information as to the value of the mortgage security so that he could draw a fair and honest conclusion. The subsequent history of the debt shows that his estimate in 1926 was even too conservative, as to what he would lose.

The commissioner, in his argument, points out that the book value of the assets allowed a safe margin of security over and above the mortgage debt, but the divergence between the book value and the real or market value is usually very great as bankruptcy proceedings will show, and this case is no exception to the general rule.

It is true, as the commissioner says, that the circumstances must be considered as they appeared at the time the deduction was made; but the taxpayer who knew them at the place and time was in a better position to make a fair and honest estimate of the value of his security than any one else could possibly be years afterward. The subsequent events show that his estimate was just and reasonable and that the commissioner's is not in accordance with the facts.

The determination of the commissioner is set aside, the order of redetermination of the Board of Tax Appeals is reversed, and the return of the petitioner reinstated.