## CONSOLIDATED DRY GOODS CO. v. UNITED STATES.

### No. 7064.

District Court, D. Massachusetts.

Oct. 29, 1940.

---

[1] No opinion for publication.

Morgan P. Gilbert and Mallary & Gilbert, all of Springfield, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit to recover an alleged overpayment of income taxes for the calendar year 1930. A claim for refund was filed, disallowed, and the action seasonably brought.

### Findings of Fact.

The facts, partly stipulated, are as follows:

The plaintiff is a Massachusetts corporation carrying on the business of dealing in dry goods at retail. It sells on the installment plan radios, washing machines, and various other items usually sold by retail furniture stores. During the period in question it operated stores in North Adams, Pittsfield, and Northampton, Massachusetts, and in Poughkeepsie and Schenectady, New York. Its main office and principal place of business is in Springfield, Massachusetts.

The plaintiff has kept its books and prepared its tax returns on the "accrual basis" and, with the consent of the Commissioner of Internal Revenue, has deducted in its income tax returns a reasonable addition to a reserve for bad debts, in lieu of actual bad debts charged off within each taxable year, as permitted by Section 23(j) of the Revenue Act of 1928, 26 U.S. C.A. Int.Rev.Acts, page 357.

The plaintiff prepared and filed its return of net income for the calendar year 1930, wherein an income tax liability for $12,100.77 was reported based on its reported net income for that year of $100,839.78. The tax was paid.

On April 24, 1933, the plaintiff filed with the Collector of Internal Revenue a claim for refund of income taxes alleged to have been overpaid which raised the issue that it was entitled to an additional deduction for the year 1930 of $12,587.24, representing an alleged reasonable addition to its reserve for bad debts for that year. The claim was disallowed.

In determining said net income of $100,839.78 for 1930, the plaintiff deducted, and it was allowed, an amount of $9,183.13 for bad debts, which was the amount on the plaintiff's accounts and records during 1930, charged to profit and loss and credited to the reserve for bad debts. An analysis of the reserve for bad debts shown by the plaintiff's books for the years 1928 to 1932, inclusive, appears as follows:

| | | |
|---|---:|---:|
| Balance, December 31, 1927....... | | $13,236.41 |
| 1928—Additions charged to Profit and Loss..................... | $20,532.69 | |
| Accounts charged off, net... | 8,252.24 | 12,280.45 |
| Balance, December 31, 1928....... | | 25,516.86 |
| 1929—Additions charged to Profit and Loss ................... | 12,277.95 | |
| Accounts charged off, net.. | 11,935.79 | 342.16 |
| Balance, December 31, 1929....... | | 25,859.02 |
| 1930—Additions charged to Profit and Loss ................... | 9,183.13 | |
| Accounts charged off, net... | 8,501.96 | 681.17 |
| Balance, December 31, 1930....... | | 26,540.19 |
| 1931—Additions charged to Profit and Loss ................... | 9,783.19 | |
| Additional amount added to Reserve at December 31, 1931 | 12,587.24 | |
| | 22,370.43 | |
| Accounts charged off, net.. | 8,910.62 | 13,459.81 |
| Balance, December 31, 1931....... | | 40,000.00 |
| 1932—Additions charged to Profit and Loss ................... | 26,119.87 | |
| Accounts charged off, net.. | 11,119.87 | 15,000.00 |
| Balance, December 31, 1932....... | | $55,000.00 |

The amounts shown as additions to the reserve for bad debts for each of the years, 1928 to 1932, inclusive, were claimed by the plaintiff in its return for those years as a deduction for bad debts and the deductions were allowed by the Commissioner.

The auditor for the plaintiff testified that when the books for the year 1930 were closed at the end of that year, it was his judgment that the reserve then set up for bad debts was adequate.

In determining that it was entitled to an additional reserve for the year 1930, the plaintiff used certain percentages of particular accounts, to wit: one-fourth of 1 per cent against accounts due less than three

months; 10 per cent against the accounts between three months and twelve months overdue; one-third against the accounts over a year; and 30 per cent against lease accounts, which, with the reserve already set up, would amount to .87 per cent of the sales for the year.

It is the contention of the plaintiff that the addition originally made to its reserve for bad debts during 1930 was insufficient by the amount of $12,587.24. This determination was alleged to have been made by the auditors for the plaintiff as a result of an audit of the plaintiff's books some time in January and February, of 1931, and was recommended by the accountants in a report submitted to the plaintiff by them on March 5, 1931. When this audit was made the books for the year 1930 had been closed. The auditor for the plaintiff stated that the additional reserve for 1930, now requested, represented a change of judgment in the early part of 1931 after the books for 1930 had been closed and was based upon what appeared in 1931 to be changing economic conditions in two of the cities, namely, Pittsfield and Schenectady, which resulted in loss of work on the part of some of the plaintiff's customers; a further investigation of the customers' accounts; the experience of the plaintiff's auditor with the plaintiff company; his experience with other concerns doing a similar business and with certain finance companies; and the experience of other auditors. When the results from these experiences were finally acquired by the auditor does not appear. The plaintiff did not include in its tax return for the year 1930 this additional sum of $12,587.24, but did include that amount in its reserve in its income tax for the year 1931, when it was allowed by the Commissioner. The inclusion of this sum in its 1931 tax return made no change whatsoever in the plaintiff's tax liability for that year. The 1931 tax return reported a loss and no tax due and even if this $12,587.24 had not been deducted, there would have been no tax liability for that year. At no time was this additional claim for reserve reflected on the books of the company until it was added to the reserve on December 31, 1931.

The case presents two questions. (1) Was the sum of $12,587.24 claimed as an additional deduction for bad debts for the year 1930 a reasonable addition to the plaintiff's reserve for bad debts, within the meaning of Section 23(j) of the Revenue Act of 1928 [1] and the applicable Treasury Regulations No. 74, Article 195? [2] (2) Is the plaintiff estopped from now claiming the benefit of setting up this additional reserve for 1930 by the fact that it included this same amount in its deduction for bad debts in its income tax return for the year 1931?

### Conclusions.

Deductions from income may not be made unless they are authorized by statute, and Section 23(j) of the Revenue Act of 1928 in allowing the taxpayer to make a choice between charging off worthless debts in the taxable year and deducting additions to a reserve for bad debts, states, that if the taxpayer elects the latter method, additions may be made to the reserve only in the discretion of the Commissioner. C.

---

[1] "Sec. [§] 23. *Deductions from Gross Income*

"In computing net income there shall be allowed as deductions: * * *

"(j) Bad debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part.

[2] "Art. 195. *Reserve for Bad Debts.*— Taxpayers who have, prior to 1928, established the reserve method of treating bad debts and maintained proper reserve accounts for bad debts, or who, in accordance with article 191, or upon securing permission from the Commissioner, adopt the reserve method of treating bad debts, may deduct from gross income a reason-

able addition to a reserve for bad debts in lieu of a deduction for specific bad debt items.

"What constitutes a reasonable addition to a reserve for bad debts must be determined in the light of the facts, and will vary as between classes of business and with conditions of business prosperity. A taxpayer using the reserve method should make a statement in his return showing the volume of his charge sales (or other business transactions) for the year and the percentage of the reserve to such amount, the total amount of notes and accounts receivable at the beginning and close of the taxable year, and the amount of the debts which have been ascertained to be wholly or partially worthless and charged against the reserve account during the taxable year."

P. Ford & Co., Inc., v. Commissioner of Internal Revenue, 28 B.T.A. 156. In view of the broad powers of discretion granted to the Commissioner, his judgment should not be reversed unless the evidence plainly shows that it is wholly unsupported by the evidence, or is wholly dependent upon an error of law, or is seen to be clearly arbitrary or capricious. Cf. Silberschein v. United States, 266 U.S. 221, 225, 45 S.Ct. 69, 69 L.Ed. 256; Clark v. Commissioner of Internal Revenue, 3 Cir., 85 F.2d 622, 624; Stranahan v. Commissioner of Internal Revenue, 6 Cir., 42 F.2d 729, 731.

It will be seen from the evidence that the plaintiff's reserve for bad debts on December 31, 1927, was $13,236.41 and on December 31, 1930, was $26,540.19, and on the latter date regarded as sufficient by the plaintiff's auditors. In 1928, $20,532.69 was added to the reserve. Gross sales for 1928 were $4,559,859.18 and accounts receivable were $880,324.19. Against that reserve in 1928, $8,252.24 was charged to the reserve as bad debts. In 1929, $12,277.95 was added to the reserve and $11,935.79 charged to it. The gross sales that year were $5,830,139.01 and accounts receivable $954,553.55. In 1930, $9,183.13 was added and $8,501.96 charged to it. Gross sales for 1930 were $4,468,441.50 and accounts receivable were $917,105.94. No question was raised by the Commissioner as to the reasonableness of the sum of $12,587.24 in the plaintiff's tax return of 1931. It will be seen that in each of the years up to and including 1930, the debts ascertained to be worthless and charged against this reserve were less than the addition to the reserve. From these facts, it seems reasonable to suppose that the reserve at the end of 1930 would be adequate to take care of accounts which might thereafter become worthless. It seemed adequate to the plaintiff's auditor.

The whole picture presented here apparently caused the Commissioner to deduce, as would any reasonable person, that it was an afterthought on the part of the plaintiff to claim this deduction for 1930, when it would have the effect of reducing its tax for that year. The elimination of the item as a deduction for the year 1931, as it appears above, would result in an income for that year of only $1,978.93 which would not be subject to tax when the credit of $3,000 for domestic corporations having a net income of less than $25,000 was deducted. "The method of accounting for bad debts through a reserve does not found an absolute right in the taxpayer, for the statute expressly sanctions the Commissioner's discretion." Farmville Oil & Fertilizer Company v. Commissioner of Internal Revenue, 30 B.T.A. 1048, 1050. In the light of the facts of this case, the Commissioner's refusal to allow the additional deduction can in no way be said to be arbitrary or capricious. C. P. Ford & Co., Inc. v. Commissioner of Internal Revenue, supra.

Although the plaintiff argues in its brief that its request for an additional deduction for the year 1930 of $12,578.24 was based solely on conditions as they existed December 31, 1930, and not on subsequent events, as in the case of Farmville Oil & Fertilizer Company v. Commissioner of Internal Revenue, supra, yet the fact remains, according to the testimony of its accountants, that the taxpayer was in possession of the information as to the alleged need of the additional reserve on March 5, 1931, and it did not file its return for 1930 until March 15, 1931, where it was not claimed. It claimed this deduction, as appears above, in its return for 1931 which was filed March 15, 1932, as a reasonable addition to its reserve for 1931, and it was allowed by the Commissioner. It was not until April 24, 1933, that its claim for refund was filed and this was the first time the taxpayer called to the attention of the Commissioner that, in its judgment, the reserve for 1930 was insufficient.

The auditors for the plaintiff were satisfied that the reserve for bad debts on December 31, 1930, was adequate when the books were closed. The determination in the early part of 1931, after the books for 1930 had been closed, that an additional reserve was needed for 1930 was based upon (1) what appeared in 1931 to be changing economic conditions in two of the cities in which the plaintiff did business, (2) the experience of its auditor in other stores doing a like business and in certain finance companies, and, (3) the experience of other auditors. As I read the Farmville Oil case, supra, it is authority for the conclusion that under these circumstances, the plaintiff cannot recover.

Judgment is to be entered for the defendant, with costs.