Elton BRIMBERRY and Estate of Norma Louise Brimberry, Deceased, Elton Brimberry, Independent Executor, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

No. 77–1105.

United States Court of Appeals, Fifth Circuit.

Feb. 1, 1979.

Dougal C. Pope, Houston, Tex., for petitioners-appellants.

Scott P. Crampton, Asst. Atty. Gen., Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, App. Section, Karl P. Fryzel, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., Meade Whitaker, Chief Counsel, Internal Revenue Service, Washington, D. C., Robert A. Bernstein, Atty., James E. Crowe, Jr., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before GEE and VANCE, Circuit Judges, and HUNTER,* District Judge.

GEE, Circuit Judge:

Elton Brimberry, individually and as independent executor for the estate of his deceased wife, Norma Louise Brimberry,[1] appeals an order of the Tax Court finding deficiencies in the income taxes due under the couple's joint tax returns for the years 1967 and 1968. The deficiencies resulted from the Commissioner's disallowance of claimed partially worthless debt deductions totalling $169,750 for the two years in question.

On June 24, 1967, Mr. Brimberry loaned $175,000 to Mid-City Baptist Church in New Orleans, hoping to acquire a construction contract from the church. Mr. Brimberry received a promissory note in that amount payable December 23, 1967, and secured by $231,000 worth of first mortgage Series C bonds of the church. Those bonds were in turn secured by the church's real and personal property located on Airline Highway, including its sanctuary, educational building, high school, and gymnasium.

On November 8, 1967, the SEC filed a complaint against the church, alleging securities fraud in connection with the sale of church bonds. The SEC claimed that the church was insolvent and did not have sufficient funds to repay its $175,000 loan due in December or to make required sinking fund payments in January or to repay the first mortgage bonds as they became due. Consequently, the church was placed in receivership. On July 30, 1968, the church filed a petition for a Chapter X reorganization,[2] alleging that proceedings under Chapter X would ensure partial, if not full, payment of creditors' claims. The petition was granted, and a trustee in reorganization was appointed. At the time of trial, the Brimberrys' claim was still pending before the bankruptcy court.

The parties stipulated that the financial condition of the church during 1967 and 1968 was accurately reflected in a certified financial statement dated July 31, 1968, except for controversy over the value of the church's real property on Airline Highway.[3] The financial statement showed a deficit of approximately $275,000, using the inflated value of the realty and disregarding contingent liabilities. The parties also stipulated to uncertified statements showing that the church had gross operating receipts of approximately $600,000 during the years 1968 and 1969 and net operating receipts of approximately $35,000 in 1968 and $65,000 in 1969.

The Brimberrys claimed a $100,000 deduction in 1967 as a "loss on business venture" and a $75,000 deduction in 1968 as a "bad debt arising from sales or services." The Commissioner disallowed both deductions in their entirety. At trial the Brim-

---

* Senior District Judge of the Western District of Louisiana, sitting by designation.

1. Mrs. Brimberry died shortly after the conclusion of the trial below, and her estate was substituted as a party on appeal.

2. 11 U.S.C. § 501 et seq. (1970).

3. The financial statement valued the real property at $4.5 million based on a 1966 appraisal,

but the Tax Court found that its value was overstated at least by $2.6 million (based on reproduction cost less depreciation value of $1.9 million) and perhaps by $3.5 million (based on forced sale value of $1 million). The realty was listed for sale for $3 million for six months in 1972–73, and it was finally sold in 1973 for $750,000.

berrys characterized the deductions as partially worthless debt deductions and reduced the total claimed deduction to $169,750, conceding that they can reasonably expect to recover three percent of the loan. Issue was joined on whether the Brimberrys were entitled to a partially worthless debt deduction in any amount for the years 1967 and 1968.

■ After careful consideration of the facts, the law, and the contentions of the parties, the Tax Court concluded that the Commissioner's determination of deficiencies was neither arbitrary nor erroneous.[4] Agreeing with the Tax Court, we affirm the decision.

■ The deductibility of partially worthless debts is governed by section 166(a)(2) of the Internal Revenue Code, which provides as follows:

> Partially worthless debts.—When satisfied that a debt is recoverable only in part, the Secretary may allow such debt, in an amount not in excess of the part charged off within the taxable year, as a deduction.

The language of the statute is permissive rather than mandatory, and whether a debt is partially deductible is a decision committed to the sound discretion of the Commissioner. *Ensley Bank & Trust Co. v. United States*, 154 F.2d 968, 970 (5th Cir.), *cert. denied*, 329 U.S. 732, 67 S.Ct. 94, 91 L.Ed. 633 (1946). *See also Olympia Harbor Lumber Co. v. Commissioner of Internal Revenue*, 79 F.2d 394 (9th Cir. 1935); *Stranahan v. Commissioner of Internal Revenue*, 42 F.2d 729, 731 (6th Cir. 1930), *cert. denied*, 283 U.S. 822, 51 S.Ct. 346, 75 L.Ed. 1437 (1931). The taxpayer must demonstrate to the "satisfaction" of the Commissioner what part of the debt is worthless. Treas. Reg. § 1.166–3(a)(2)(iii). In evaluating the taxpayer's claim of partial worthlessness, the Commissioner must consider all the circumstances, including the value of any collateral securing the debt and the financial condition of the debtor. Treas.Reg. § 1.166–2(a). The Commissioner's determination will not be disturbed unless it is plainly arbitrary or unreasonable, indicating an abuse of discretion. *Ensley Bank & Trust Co. v. United States, supra.*

In reviewing the determination of the Commissioner, we must keep in mind that the "question of the fact of a partial loss is not a question . . . for our consideration. The question for [our] consideration is whether or not there has been an abuse of discretion by the Commissioner in refusing to permit a deduction." *Olympia Harbor Lumber Co. v. Commissioner of Internal Revenue*, 79 F.2d 394, 396–97 (9th Cir. 1935). And we must also remember that "[w]here a showing to the satisfaction of the Commissioner is required, it is reasonably likely that the need of administrative experience to make the determination, as well as the difficulty of exact proof, was a controlling reason for the delegation of power. A court should not lightly substitute its own judgment." *United States v. Beckman*, 104 F.2d 260, 262 (3d Cir.), *cert. denied*, 308 U.S. 593, 60 S.Ct. 123, 84 L.Ed. 496 (1939), quoting Magill, *Finality of Determinations of the Commissioner of Internal Revenue*, 30 Colum.L.Rev. 147, 166–67 (1930).

■ Brimberry contends that the Commissioner abused his discretion in refusing to allow a partially worthless debt deduction in any amount for the years 1967 and 1968. It is Brimberry's position that, although the Commissioner was not obligated to accept Brimberry's claimed deductions of $100,000 in 1967 and $69,750 for 1968, the Commissioner was obligated to make his own determination of the extent to which the debt had become partially worthless, considering all the facts and circumstances of the case. Brimberry concludes that the Commissioner's refusal to allow any amount, "even $1.00," is arbitrary and unreasonable. Even if we accepted Brimber-

---

4. The Commissioner's determination in his statutory notice of deficiency is presumptively correct. That determination stands unless the taxpayer proves that the determination is arbitrary or erroneous. *See, e. g., Helvering v. Taylor*, 293 U.S. 507, 515, 55 S.Ct. 287, 79 L.Ed. 623 (1935).

ry's premise that the Commissioner was obligated to make his own determination of the extent to which the debt had become partially worthless,[5] we cannot accept his conclusion that the Commissioner's refusal to allow any amount, "even $1.00," constitutes an abuse of discretion on the facts of this case.

■ Brimberry's conclusion as to the partial worthlessness of his debt is based on the following factors: the insolvency of the church, the SEC's complaint against the church in 1967, and the church's institution of a Chapter X reorganization proceeding in 1968. Brimberry's claim of partial worthlessness was triggered by the SEC action filed in 1967, based on his folk wisdom that an SEC action invariably results in bankruptcy. We agree with the Tax Court, however, that the institution of the SEC action need not necessarily be accorded any independent significance. The church was placed in receivership pursuant to the SEC proceeding in order to marshal and preserve its assets, and there was no sound basis in 1967 for concluding that the receivership would fail of its purpose.

The church's institution of a Chapter X reorganization proceeding in 1968 also contributed to Brimberry's conclusion as to the partial worthlessness of the debt.[6] Brimberry points to Treasury Regulation § 1.166–2(c), which provides that "[b]ankruptcy is generally an indication of the worthlessness of at least a part of an unsecured and unpreferred debt." The church had not been declared bankrupt, however, and Brimberry's loan was at least partially secured. The purpose of the reorganization was to nurse the church back to financial stability while protecting the interests of creditors, and the petition alleged that a reorganization proceeding would ensure the payment of all claims in part, if not in full. The district court granted the petition, indicating a finding that, viewing the situation realistically, the court reasonably expected that a plan of reorganization could be effected and that the corporation could be preserved as a going concern. 11 U.S.C. §§ 541, 546 (1970); *Fidelity Assurance Association v. Sims*, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032 (1943). The pendency of reorganization proceedings in 1968 did not necessarily justify Brimberry's conclusion that his loan had become virtually worthless in that year. *See Lehman v. Commissioner of Internal Revenue*, 129 F.2d 288, 290 (2d Cir. 1942).

The insolvency of the church is the third and most important factor that contributed to Brimberry's conclusion that his debt was partially worthless. Using calculations based on the July 1968 financial statement, but substituting the forced-sale value of the land, Brimberry argues that the most a creditor could expect to receive upon liquidation in 1968 was between 30 and 36 cents on the dollar, depending on whether the contingent liabilities became actual. Brimberry contends that even this estimate is unduly optimistic since the financial statement does not include any administrative fees attributable to the 1967 SEC receivership or the 1968 reorganization proceeding.[7] The crucial flaw in Brimberry's financial analysis is that it is based on liquidation values rather than on "going concern" principles. In 1968 there was no sound reason for concluding that the church would be forced to liquidate its assets. In fact, the contrary was true as evidenced by the pendency of the reorganization proceeding.

Brimberry contends nevertheless that the insolvency of the debtor is always conclu-

---

5. It has been held that "merely by claiming a large partial deduction, a taxpayer cannot put on the Commissioner the task of ascertaining that a substantially smaller deduction might have been justified." *Lehman v. Commissioner of Internal Revenue*, 129 F.2d 288 (2d Cir. 1942).

6. It should be noted that Brimberry's original total claimed deduction of $175,000 indicated

that he thought that the debt became wholly worthless in 1968, an untenable position that he does not urge on appeal.

7. We do not consider persuasive the opinion evidence of Brimberry's "bankruptcy expert," who testified that the most Brimberry could realistically expect to recover in bankruptcy would be three percent of his loan.

sive evidence that a debt is partially worthless, relying on the following language from *Bar L Ranch, Inc. v. Phinney*, 426 F.2d 995, 1000 (5th Cir. 1970):

> [W]hen a taxpayer shows that those liable on a note or account receivable are insolvent, the commercial practicalities and realities dictate that he has met his burden of showing that those obligations are not worth their face value and that a valuation at face is arbitrary.

*Bar L Ranch* is not applicable, however, because the court there was not concerned with the discretionary refusal of a partially worthless debt deduction but with the nondiscretionary valuation of a capital asset for the purpose of computing capital gain. The issue in *Bar L Ranch* was the fair market value of a note; the issue here is the ultimate collectibility of a note. Although the fair market value of a note and the ultimate collectibility of a note are definitely related, they are by no means synonymous. The insolvency of one liable on a note might affect the fair market value of the note, but it does not necessarily affect the ultimate collectibility of a note, especially when, as here, the operating revenue of the note's maker continued at the same steady level during the relevant years.

 Brimberry suggests that events in subsequent years [8] tend to substantiate his claim that the debt was partially worthless in 1967 and 1968, but hindsight is always $^{20}/_{20}$. For purposes of review, the facts must be considered as they existed at the time the deduction was taken. *Clark v. Commissioner of Internal Revenue*, 85 F.2d 622, 625 (3d Cir. 1936). Of course, the Commissioner's denial of a partially worthless debt deduction for the years 1967 and 1968 does not preclude Brimberry from attempting to establish a partially worthless debt deduction for later years.

Brimberry's evidence that the debt became partially worthless in 1967 and 1968 is persuasive but not compelling. While we are inclined to believe that the debt was indeed partially worthless in the years in question, we cannot say that the evidence precluded a reasonable belief that the debt might ultimately be recovered in full, considering the church's consistently healthy operating revenues in 1968 and 1969 and the prospect of a successful reorganization in 1968. Because the fact of partial worthlessness is a question for the determination of the Commissioner and because a court should not lightly substitute its own judgment, we feel compelled to uphold the Commissioner's determination. Accordingly, the order of the Tax Court is

AFFIRMED.

---

8. The church property securing the note was sold in 1973 for an amount dramatically lower than its appraised value; the operating revenues of the church dropped at least 50% for the years 1971 and 1972; the church was still in reorganization proceedings in 1975, indicating substantial administrative fees. The Commissioner suggests that the subsequent deterioration of the financial condition of the church was not necessarily related to the church's prior financial problems. The record indicated that changing economic conditions in the church's neighborhood contributed substantially to subsequent financial problems.