K & R SERVICE CO., INC., Jack Love Construction, Inc., John S. Krejci, Inc., Grange Construction, Inc., M–K Construction, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. Nos. 75–1941–N to 75–1945–N.

United States District Court, D. Massachusetts.

March 31, 1983.

Gregory Flynn, Asst. U.S. Atty., Boston, Mass., John P. McAllister, Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

Lawrence I. Hanson, Jenswold, Studt, Hanson, Clark & Kaufmann, Madison, Wis., for plaintiffs.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

Five related Wisconsin corporations, which were engaged primarily in sewer and water-main construction until terminating operation in 1973, have brought the present actions seeking refund of corporate tax payments for various years during the 1960's. The principal issue involves the deductibility as bad debts of certain monetary advances made to Grange Construction, Inc. (Grange) by the other four plaintiffs. Having reviewed the trial testimony and exhibits and the parties' extensive factual stipulations, the court rules in the government's favor on all counts.

The five plaintiff corporations shared close familial links during each of the taxable years in issue. Majority ownership of each resided in one individual, James Malloy, until his death in 1968 and remained common to all the plaintiffs thereafter. Each was managed by a common group of officers. And the plaintiffs used a common office and staff and regularly indemnified each other as contractors against their common surety. Their relationship grew even closer on May 31, 1969 when the other four companies merged into Grange. Six months later, operational difficulties among

the plaintiffs necessitated establishment of a joint control agreement with the surety company, under whose control they continued to function until terminating operations in 1973.

In 1971, the plaintiffs retained an accountant named Albert Ellingboe, Jr. to assist in closing out the different companies. Ellingboe, the sole witness at trial, testified that he had never been associated with the plaintiffs before that time. In examining the companies' financial records, to which he had full access, Ellingboe determined that "gross errors" had been committed on earlier tax returns. In particular, he concluded that Grange had been insolvent by the end of 1964, a fact which it had managed to conceal at that time and thereafter through various forms of bookkeeping legerdemain. It followed, he reasoned, that certain outstanding advances that the other plaintiffs had made to Grange in that year were deductible as bad debts. Ellingboe, in his new status as corporate officer, filed claims for refund in the name of each company and, following the government's rejection thereof, instituted the present actions.

■ In lieu of compensation for his services, the plaintiffs assigned to Ellingboe any recovery that might result from the instant claims. The government contends at the outset that, in light of this arrangement, Ellingboe constitutes the real party in interest under Fed.R.Civ.P. 17(a) and that the suits must therefore be dismissed as violative of the anti-assignment statute. 31 U.S.C. § 203. This statute plainly would bar the present actions were Ellingboe the named plaintiff. Yet because he is not, the government's contention fails. "The effect of the statute is upon the assignment, not upon the claim. The assignor can still bring suit." D. Schwartz & S. Jacoby, *Litigation with the Federal Government* 237 (1970), *citing Colonial Navig. Co. v. United States,* 181 F.Supp. 237, 240, 149 Ct.Cl. 242 (1960). The government's position would create the untenable situation in which the assignment of a tax claim against the United States would effectively preclude all parties from seeking enforcement thereof. Far from be-

ing irrelevant, however, Ellingboe's stake in the outcome of this litigation remains germane for the purpose of assessing credibility.

■ The government fares better on the merits. Section 166(a) of the Code provides: "There shall be allowed as a deduction any debt which becomes worthless within the taxable year." 26 U.S.C. § 166(a). Plaintiffs seek to invoke this provision with respect to the following monetary advances received by Grange in the 1964 taxable year: $41,000 from K & R Service Co., Inc.; $9,000 from Jack Love Constr., Inc.; $23,000 from John S. Krejci, Inc.; and $48,000 from M–K Constr., Inc. To do so successfully, they must establish by a preponderance of the evidence that such advances were bona fide debts which became worthless within the specified taxable year. *E.g., Levin v. United States,* 597 F.2d 760, 767, 220 Ct.Cl. 197 (1979) (per curiam); *Russell Box Co. v. Commissioner,* 208 F.2d 452, 455 (1st Cir.1953). Their evidence falls short on both counts.

■ The determination of worthlessness necessitates a consideration of "all pertinent evidence, including the value of the collateral, if any, securing the debt and the financial condition of the debtor." Treas. Reg. § 1.166–2(a). The last-mentioned factor, however, "furnishes the primary test of worthlessness," 5 Mertens *Law of Federal Income Taxation* § 30.56, at 117 (1980), and plaintiffs have focused exclusively thereon. Ellingboe testified that, based upon his examination of its financial records, Grange was "hopelessly insolvent" by the end of 1964, with a negative net worth of some $816,000. Had this fact been known, Grange would have been unable to secure bonding for its construction projects and thus would have gone out of business immediately. However, the company was able to conceal its insolvency for at least five years, according to Ellingboe, through fraudulent bookkeeping practices—in the main by repeatedly overstating its "work-in-progress" accounts which are used to apportion among several taxable years income deriving from multi-year projects.

This evidence, while telling, is insufficient without more to overturn the Commissioner's determination as to worthlessness. When he first concluded in 1971 that Grange had been insolvent, Ellingboe of course was interpreting seven-year-old bookkeeping entries pertaining to a period during which he had had no involvement with the company. Moreover, there was no evidence concerning what relationship these book values, even as amended, had to actual market values. *See* 5 Mertens, *supra,* § 30.57, at 118 n. 1. But even were one to accept Ellingboe's characterization of Grange's financial position at the close of 1964, "[e]vidence of insolvency based on book figures does not necessarily establish the worthlessness of debts." *Trinco Indus., Inc. v. Commissioner,* 22 T.C. 959, 965 (1954), *quoted in Estate of H.W. Oakley v. Commissioner,* 31 T.C.M. (C.C.H. Dec. 31,240 1972). And several factors here further militate against such a conclusion. "Where a debtor company continues to operate as a going concern courts have often concluded that its debts are not worthless for tax purposes despite the fact that it is technically insolvent." *Roth Steel Tube Co. v. Commissioner,* 620 F.2d 1176, 1182 (6th Cir. 1980); *accord, e.g., Record Wide Dist'rs, Inc. v. Commissioner,* 682 F.2d 204, 207 (8th Cir.1982); *Brimberry v. Commissioner,* 588 F.2d 975, 978 (5th Cir.1979); *Commissioner v. Transport Manuf. & Equip. Co.,* 478 F.2d 731, 737 (8th Cir.1973). As noted above, Grange continued operations on its own until 1969 and under the wing of its bonding company until 1973. Second, the other plaintiffs continued to make advances to Grange during the ensuing years, such that by 1969 the level of outstanding advances had more than doubled. "[T]he granting or extending of additional credit after failing to receive proper payment from a prior debt would also indicate that the debt was not worthless." *Riss v. Commissioner,* 478 F.2d 1160, 1167 (8th Cir.1973); *accord, e.g., Roth Steel Tube Co. v. Commissioner,* 620 F.2d at 1182. Third, and more fundamentally,

> Insolvency generally means an insufficient amount of property to pay all of the debtor's debts in full, but the state of insolvency does not necessarily mean that none of the debts will be paid at all. Accordingly, it is necessary to ascertain the extent of the insolvency and the possibility of collection, bearing in mind the status of the particular taxpayer-creditor with reference to other creditors.

5 Mertens, *supra,* § 30.57, at 117; *see also Brimberry v. Commissioner,* 588 F.2d at 978–79. Plaintiffs have offered no evidence as to their relative standing among Grange's creditors, the security if any accompanying these advances, or the general prospects of and steps taken toward collection. Finally, the court is generally disinclined to permit four corporations to benefit from the concededly fraudulent practices of a fifth, when all five were commonly owned and managed throughout the relevant period. For these reasons, the Commissioner's rejection of the plaintiffs' characterization of these advances as worthless in 1964 appears supportable.

■■■ Even if not, plaintiffs' attempt to depict the various advances as bona fide loans proves even more troublesome. The Treasury Regulations provide:

> Only a bona fide debt qualifies for purposes of section 166. A bona fide debt is a debt which arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. A gift or contribution to capital shall not be considered a debt for purposes of section 166.

Treas.Reg. § 1.166–1(c). Determining whether the transactions here qualify under this provision necessitates consideration of "a number of different factors." *Casco Bank & Trust Co. v. United States,* 544 F.2d 528, 532 (1st Cir.1976), *cert. denied,* 430 U.S. 907, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977). The many relevant criteria enumerated in the case law, *see, e.g., id.; In re Uneco, Inc.,* 532 F.2d 1204, 1208 (8th Cir.1976); *Smith v. Commissioner,* 370 F.2d 178, 180 (6th Cir. 1966), fall roughly into three categories: (1) the intent of the parties; (2) the form of the instruments; and (3) the objective economic reality. *Fischer v. United States,* 441 F.Supp. 32, 36 (E.D.Pa.1977), *aff'd mem.,*

582 F.2d 1274 (3d Cir.1978). Plaintiffs' evidence, however, is entirely silent as to the first two and counterproductive as to the third. The transacting parties' intent remained wholly unexplored at trial; there was no documentary evidence thereof and Ellingboe could provide no insights, having joined the companies seven years after the fact. Second, the gaps in plaintiffs' evidence yield the conclusions that there were no notes or other written evidences of indebtedness; no corporate minutes concerning these advances; no provision for security or collateral; no provision for or actual payment of interest; no fixed date for repayment; no right to demand repayment; and no provision for prepayment. Finally, the evidence of Grange's precarious financial condition in 1964 suggests that an "outside lending institution" was then unlikely to have advanced to it the amounts involved here. *Casco Bank & Trust Co. v. United States,* 544 F.2d at 532. This fact, combined with Grange's general undercapitalization, further militates against the existence of bona fide indebtedness. *See, e.g., In re Uneco,* 532 F.2d at 1208.

These various factors amply buttress the Commissioner's determination. Moreover, advances between related corporations "are subject to particular scrutiny" in this context, *id.* at 1207, since the control element "suggests the opportunity to contrive a fictional debt." *Cuyuna Realty Co. v. United States,* 382 F.2d 298, 300–01, 180 Ct.Cl. 879 (1967); *accord, e.g., Riss v. Commissioner,* 478 F.2d at 1166. For the foregoing reasons, the court concludes that plaintiffs have failed to survive such scrutiny, and that the Commissioner's disallowance of the claimed deductions is, on two independent bases, fully supportable.

The twelve remaining counts, which contain allegations unrelated to the Grange bad debt issue, can be dismissed summarily. Plaintiffs have argued none of them in their brief, and most involve contentions at variance with those included in plaintiffs' claims for refund—a procedural infirmity which bars independent suit thereon. Treas.Reg. § 301.6402–2(a). The court per-

ceives no error in the Commissioner's determinations.

Judgment shall lie for the defendant on all counts.

SO ORDERED.