T.C. Memo. 2002-297


UNITED STATES TAX COURT


BEST AUTO SALES, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ABC AUTOS, INC., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10149-97, 10150-97.    Filed December 2, 2002.


B. Gray Gibbs, for petitioners.

James F. Kearney, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, Judge:  These cases are consolidated for trial,
briefing, and opinion.  Respondent determined against petitioners
deficiencies in Federal income taxes and accuracy-related

penalties for tax years ending May 31, 1990, 1991, and 1992 as follows:

### Best Auto Sales, Inc.

| Year Ending | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|
| May 31, 1991 | $79,787 | $15,957 |
| May 31, 1992 | 15,413 | -- |

### ABC Autos, Inc.

| Year Ending | Deficiency | Accuracy-Related Penalty Sec. 6662(a) |
|---|---|---|
| May 31, 1990 | $97,851 | $19,570 |
| May 31, 1991 | 58,432 | 11,686 |
| May 31, 1992 | 81,560 | 16,312 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The primary issues for decision are:

(1) Whether petitioners are entitled to bad debt deductions with respect to certain automobile loans;

(2) Whether petitioner ABC Autos, Inc., is entitled under sections 1.471-2(c) and 1.471-4(c), Income Tax Regs., to claimed write-downs of its used automobile inventory to the lower of cost or market; and

(3) Whether petitioners are liable for accuracy-related penalties under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petitions were filed, the principal place of business for each petitioner was located in Tampa, Florida.

During the years in issue, petitioners owned and operated separate used automobile dealerships. Petitioners were engaged in the sale of used automobiles to high credit risk purchasers and in financing the purchase of the automobiles at high interest rates (e.g., 32 percent) over short repayment periods (e.g., 1 to 2 years). Typically, under the automobile loans that petitioners made, the purchasers (hereafter "debtors") of the automobiles were obligated to make installment payments to petitioners on a weekly, biweekly, semimonthly, or monthly basis.

When loan payments due on petitioners' automobile loans became delinquent, petitioners' office personnel mailed to the debtors past due notices and demand letters requesting that the delinquent amounts due on the loans be paid.

If the debtors failed to make the delinquent payments due on the automobile loans within a few days or weeks after notification, petitioners initiated repossession of the debtors' automobiles through a third-party automobile repossession agent. After repossession of the automobiles, petitioners notified the

debtors by mail that the automobiles would be sold unless the debtors within 10 days made the delinquent loan payments or fully paid off the loans.

Upon failure of the debtors to make the delinquent loan payments or to fully pay off the loans, the automobiles would be repurchased by petitioners at what were essentially private sales, and the automobiles would be returned to petitioners' used automobile inventory for resale to retail customers or to wholesalers. In this manner, many of petitioners' automobiles were sold, repossessed, placed back into petitioners' automobile inventory, and resold a number of times. Occasionally, automobiles to be repossessed were not located, and occasionally automobiles were voluntarily returned by the debtors.

For the years in issue, petitioners' books and Federal corporation income tax returns were prepared using the accrual method of accounting.

Generally, with regard to past due or delinquent automobile loans, upon repossession or return of the automobiles securing the loans, all but $100 of the outstanding balance due on the loans would be charged off on petitioners' corporate Federal income tax returns as business bad debt deductions. The $100 amount was arbitrary and reflected the value, for tax purposes, that was allocated by petitioners to each and every repossessed or returned automobile, regardless of make, year, and condition.

With regard to delinquent loans with respect to which the automobiles securing the loans were not located by petitioners' repossession agent, the entire outstanding balance of the loans would be charged off on petitioners' corporate Federal income tax returns as business bad debt deductions.[1]

Whether a bad debt tax deduction relating to a particular loan and repossession was claimed on petitioners' corporate Federal income tax return for the current tax year or for the prior tax year depended on when the loan originated and whether the repossession of the automobile occurred prior to the filing of the tax return for the prior tax year. With respect to a delinquent loan that had been made in the prior tax year and where the repossession of the automobile occurred in the current tax year but prior to the filing of the corporate Federal income tax return for the prior tax year, the related bad debt deduction would be claimed by petitioners on the tax return for the prior tax year.

---

[1] The record is not completely clear as to how the amount of a particular loan chargeoff was calculated for purposes of petitioners' financial books and records. Some evidence indicates that upon repossession or return of an automobile securing a loan, the amount of the chargeoff was calculated in the same manner as it was calculated for tax purposes (namely, all but $100 of the outstanding balance due on the related loan would be charged off). Other evidence indicates that for financial book purposes upon repossession of an automobile petitioners determined the wholesale book value of the automobile and charged off only the difference between the loan balance and the wholesale book value.

With respect to a delinquent loan that had been made in the prior tax year and where the repossession of the automobile occurred in the current tax year but after the filing of the corporate Federal income tax return for the prior tax year, the related bad debt deduction would be claimed by petitioners on the tax return for the current tax year.

For example, for the tax year ending May 31, 1990, petitioner ABC Autos, Inc. (ABC), in November of 1990 (before filing its corporate Federal income tax return for its tax year ending May 31, 1990), charged off as bad debts $237,795 in automobile loans that were outstanding as of May 31, 1990, even though the automobiles securing the loans were repossessed between June and November of 1990. In ABC's journal entry of November 17, 1990, reflecting the above chargeoff of $237,795, a written notation is made to the effect that the related loans "went bad in June-Nov. '90'".

Also, on ABC's corporate Federal income tax returns for its tax years ending May 31, 1990 and 1992, ABC's yearend total basis in its used automobile inventory was written down under sections 1.471-2(c) and 1.471-4(c), Income Tax Regs. No records were maintained by ABC to substantiate how these inventory write-downs were calculated.

After respondent's audits were completed, on February 28, 1997, respondent issued to each petitioner a separate notice of

deficiency for the years in issue in which respondent disallowed the above claimed bad debt deductions to the extent the deductions claimed on the tax returns were based on delinquent loans with respect to which the automobiles securing the loans were repossessed or returned (or identified as unlocatable) after the end of the year for which, for Federal income tax purposes, the related bad debt deductions were claimed. The total amounts of petitioners' claimed bad debt deductions disallowed by respondent for each year were allowed to petitioners by respondent as bad debt deductions for the immediately following year.

Respondent also, in the notice of deficiency issued to ABC, disallowed the inventory write-downs claimed by ABC for its 1990 and 1992 tax years.[2]

In addition, respondent determined against petitioners accuracy-related penalties under section 6662(a).

---

[2] Respondent's notice of deficiency for 1990 issued to ABC also reflects a related sec. 481 adjustment that appears to be mechanical and not in dispute.

OPINION

Bad Debt Deductions[3]

We review for an abuse of discretion respondent's determinations under section 166(a)(2) to disallow deductions for debts claimed to be partially worthless, and respondent's determinations in that regard will not be disturbed unless plainly arbitrary or unreasonable.  Brimberry v. Commissioner, 588 F.2d 975, 977 (5th Cir. 1979), affg. T.C. Memo. 1976-209; Austin Co. v. Commissioner, 71 T.C. 955, 971 (1979) (citing Findley v. Commissioner, 25 T.C. 311, 319 (1955), affd. per curiam 236 F.2d 959 (3d Cir. 1956)).

Generally, to be entitled to deductions under section 166(a)(2) for debts claimed to be partially worthless, taxpayers have the burden of proving that, based on all the facts and circumstances, the portion of the debts with respect to which the deductions are claimed became unrecoverable by the end of the year for which the deductions are claimed.  Austin Co. v. Commissioner, supra at 971; Portland Manufacturing Co. v. Commissioner, 56 T.C. 58, 73 (1971), affd. without published opinion 35 AFTR 2d 75-1439, 75-1 USTC par. 9449 (9th Cir. 1975).

---

[3]    The parties treat and brief the issue as to the allowability of petitioners' claimed bad debt deductions relating to the automobile loans under the bad debt provisions of sec. 166.  No claim is made that the claimed deductions should be allowed under the loss provisions of sec. 165.

The fact that some payments on debts become delinquent, standing alone, does not establish the worthlessness or uncollectibility of the debts or of any portion thereof. Milenbach v. Commissioner, 106 T.C. 184, 204-205 (1996).

A taxpayer's business judgment concerning whether debts in a particular year are partially worthless, if clearly supported by facts, may be sufficient to prove the partial worthlessness of the debts for a particular year. Portland Manufacturing Co. v. Commissioner, supra at 73.

Petitioners argue that the alleged "sound business judgment" of petitioners has been established by the loan delinquencies, the automobile repossessions, and the inherent nature of the loans made to high credit risk customers. We disagree.

We perceive little "sound business judgment" in petitioners' method of charging off the loans in issue. Rather, petitioners' method was arbitrary and unrelated to the exercise of any meaningful discretion with respect to particular loans. Essentially, because petitioners' automobile loans were made to high risk customers, petitioners would have us treat all of their automobile loans to customers whose cars were repossessed as inherently worthless from the day the loans originated. We reject that treatment. The facts of loan delinquency and automobile repossession in a year, combined with high risk debtors, do not automatically establish the full or partial

worthlessness of a loan for the year prior to the year in which the repossession occurred.

No facts extant at the end of May 1990, 1991, and 1992, have been established by petitioners that would support the disputed claimed bad debt deductions for those years.

Inventory Write-Downs

Section 471 provides that a taxpayer should use a method of accounting for inventory as prescribed by the Secretary that clearly reflects the taxpayer's income.

Inventory should be recorded in a legible manner, properly computed, summarized, and kept as part of the accounting records of the taxpayer. Sec. 1.471-2(e), Income Tax Regs.

When respondent determines that a taxpayer's method of accounting for inventory under section 471 is improper, the taxpayer has a heavy burden of proving that respondent's determination is plainly arbitrary and constitutes an abuse of discretion. Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979).

The Secretary's regulations provide that the lower of cost or market is an acceptable method of accounting for inventory. Sec. 1.471-2(c), Income Tax Regs.

Under the lower of cost or market method, as of the end of an inventory period (e.g., as of yearend) the cost of each item of inventory is compared to its market value, and the lower of

the two is recorded as the basis of that item of inventory for tax purposes. Sec. 1.471-4(c), Income Tax Regs. If as of yearend the market value of inventory is lower than its cost, the taxpayer "writes down" the basis of the inventory to the lower market value, thereby reducing gross income. See, e.g., Thor Power Tool Co. v. Commissioner, supra at 530.

The write-down of inventory from cost to market value based on mere estimates is not allowable. Sec. 1.471-2(f)(1), Income Tax Regs.

An official guide for used automobiles may be used to ascertain the market value of used automobile inventory for purposes of determining the lower of cost or market value. Brooks-Massey Dodge, Inc. v. Commissioner, 60 T.C. 884, 895 (1973) (citing Rev. Rul. 67-107, 1967-1 C.B. 115).

Without objective evidence such as books and records to substantiate that item-by-item comparisons of cost to market value were conducted by ABC in the calculation of its yearend inventory write-downs, we will not disturb respondent's determination to disallow ABC's claimed inventory write-downs. See Thor Power Tool Co. v. Commissioner, supra at 536; Import Specialties, Inc. v. Commissioner, T.C. Memo. 1982-41. The testimony of ABC's president that at yearend he made estimates of the value of the automobiles does not provide a basis on which the claimed inventory write-downs can be allowed in this case.

Accuracy-Related Penalties

Under section 6662, accuracy-related penalties of 20 percent are imposed on underpayments of tax attributable to negligence or to a disregard of Federal rules or regulations. Sec. 6662(a) and (b)(1).

For purposes of section 6662, the term "negligence" constitutes a failure to make a reasonable attempt to comply with the Internal Revenue Code, and the term "disregard" includes carelessness, recklessness, and intentional disregard. Sec. 6662(c). "Negligence" also includes a failure by a taxpayer to keep adequate books and records or to properly substantiate items. Sec. 1.6662-3(b)(1), Income Tax Regs.

Petitioners did not make a good faith attempt to ascertain which loans were worthless at yearend.

Also, ABC's failure to maintain records to substantiate its inventory write-downs constitutes negligence under section 6662(a). See secs. 1.471-2(e) and (f)(1), 1.6662-3(b)(1), Income Tax Regs. We sustain respondent's determination of the section 6662 penalties.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.