**WALL INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 448–82T.**

United States Claims Court.

May 28, 1986.

John S. Nolan, Washington, D.C., for plaintiff; F. Brook Voght, Miller & Chevalier, of counsel.

Allan C. Lewis, Washington, D.C., with whom was Acting Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### I. *Introduction*

This is a tax refund suit in which the plaintiff, Wall Industries, Inc., seeks a refund of $339,723 in 1974 federal corporate income taxes, plus statutory interest. The claim is based on a 1977 net operating loss (NOL) deduction of $701,694 which plaintiff alleges the Internal Revenue Service (IRS) should have carried back administratively to its 1974 taxable year so as to allow a deduction which would have resulted in a refund of corporate income taxes (*i.e.*, $339,723) previously paid for such year. While defendant has stipulated to the existence of the 1977 NOL, and the amount of overpayment for 1974 (*i.e.*, $339,723)

based thereon,[1] it asserts, nevertheless, that this court lacks subject matter jurisdiction over plaintiff's refund claim (except as indicated, *infra*) because plaintiff failed to timely file an administrative claim for refund within the required statutory period.[2] *See* 26 U.S.C. §§ 6511, 7422 (1976). Plaintiff pursues entitlement to relief for refund of the entire $339,723 under both the *formal* as well as the *informal* claim theory. In its cross-motion for summary judgment, defendant concedes that "plaintiff is entitled to recover ... $93,846 [only because] a timely [formal] claim was made for that amount." [3] As to the balance ($339,723 — $93,846, *i.e.*, $245,877), defendant contends that plaintiff is barred from recovery under both the *formal* and the *informal* claim theory because of its failure to timely file a claim for refund. In addition to the foregoing, defendant also asserts that plaintiff's claim is barred by

1. The parties entered into a joint stipulation filed May 16, 1984, which states as follows:

 The parties agree that during the calendar year ended December 31, 1977, Wall Industries realized a $701,694 net operating loss which, if carried back to Wall's 1974 taxable year pursuant to Section 172 Internal Revenue Code of 1954, would result in a $339,723 overpayment of federal income tax with respect to Wall's 1974 taxable year. Plaintiff's entitlement to a refund of $339,723 in tax for 1974 is the issue to be determined in this proceeding.

2. 26 U.S.C. § 6511 (1976), "Limitations on credit or refund," provides in pertinent parts as follows:

 (a) *Period of limitation on filing claim.* —Claim for credit or *refund* of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return *shall be filed* by the taxpayer *within* 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later....

 (b) *Limitation on allowance of credits and refunds.*—

 (1) *Filing of claim within prescribed period.* —No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

 (2) *Limit on amount of credit or refund.*—

 (A) *Limit where claim filed within 3-year period.*—If the claim was filed by the taxpayer during the 3-year period prescribed in subsection (a), *the amount of the* credit or *refund shall not exceed* the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extention of time for filing the return....

 (B) *Limit where claim not filed within 3-year period.*—If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

 (C) *Limit if no claim filed.*—If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

 \* \* \* \* \* \*

 (d) *Special rules applicable to income taxes.* —

 \* \* \* \* \* \*

 (2) *Special period of limitation with respect to net operating loss or capital loss carrybacks.* —

 (A) *Period of limitation.*—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, in lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be that period which ends with the expiration of the 15th day of the 40th month (or the 39th month, in the case of a corporation) following the end of the taxable year of the net operating loss ... which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later; except that—

 \* \* \* \* \* \*

 In the case of such a claim, *the amount* of the credit or refund *may exceed* the portion of the tax paid within the period provided in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to such carryback. (emphasis added).

 26 U.S.C. § 7422 (1976), "Civil actions for refund," provides in pertinent part as follows:

 (a) *No suit prior to filing claim for refund.*— *No suit* or proceeding *shall be maintained in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed ... *until a claim for refund* or credit *has been duly filed* with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary estabiished in pursuance thereof. (emphasis added).

3. Defendant's Cross-Motion for Summary Judgment (DXMSJ) at 8.

the Anti-Assignment Act, 31 U.S.C. § 3727 (1982),[4] in view of an agreement executed on May 17, 1982, between plaintiff and its certified public accountants, Arthur Young & Company (Arthur Young).

In reply, plaintiff avers that it did in fact duly file both an *informal* (prior to March 15, 1981) as well as a *formal* (June 10, 1981) claim for refund for the full $339,723 in taxes within the applicable statutory period. Alternatively, plaintiff contends that at the least it is entitled to an income tax refund of $93,846 representing the amount of income taxes paid by plaintiff within the two-year period immediately preceding the date it filed its formal claim for refund (*i.e.*, a $93,846 1974 income tax deficiency was paid on August 13, 1979, and its Refund Form 1120X was filed on June 10, 1981). 26 U.S.C. § 6511(a) and (b)(2)(B).

Against the foregoing background, and following appropriate discovery, the parties have cross-moved for summary judgment. Neither a jurisdictional hearing nor oral argument was requested by the parties. Inasmuch as the parties have stipulated to the merits, favorably to the plaintiff, and that the only issue remaining in controversy is that of jurisdiction (§§ 7422 and 6511 of 26 U.S.C. and the Anti-Assignment Act, 31 U.S.C. § 3727), we believe that this case should and must be resolved by appropriately treating defendant's summary judgment motion (RUSCC 56) as one pursuant to RUSCC 12(b)(1), *i.e.*, a motion to dismiss for lack of subject matter jurisdiction.[5] Given the foregoing, and because we find as a matter of law that this court possesses subject matter jurisdiction over plaintiff's *full* claim for refund, based on the well-

---

**4.** 31 U.S.C. § 3727 (1982), "Assignment of claims," provides in pertinent part as follows:

(a) In this section, "assignment" means—
(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or
(2) the authorization to receive payment for any part of the claim.
(b) An assignment may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued. The assignment shall specify the warrant, must be made freely, and must be attested to by 2 witnesses. The person making the assignment shall acknowledge it before an official who may acknowledge a deed, and the official shall certify the assignment. The certificate shall state that the official completely explained the assignment when it was acknowledged. An assignment under this subsection is valid for any purpose.

**5.** As the ultimate question presented in this case (whether plaintiff fulfilled the administrative claim requirement of §§ 7422 and 6511) is jurisdictional in nature, a resolution of this issue is properly raised in this court pursuant to RUSCC 12(b)(1) (1984) which provides, *inter alia,* that:

(b) .... Every defense, in law or fact, to a claim for relief in any pleading, ... shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) *lack of jurisdiction over the subject matter,* ... (emphasis added).

Were the merits of plaintiff's claim in issue, *i.e.,* the existence of a 1977 NOL or a tax payment in 1974, we would, of course, honor the summary judgment procedure. However, as stated *supra,*

inasmuch as the parties have stipulated favorably to the plaintiff's entitlement to the refund requested, *if* jurisdiction is found to be present, we need to decide only the jurisdictional question in order to definitively dispose of this case.

Pursuant thereto, we find defendant's jurisdictional attack to be clearly factual in nature. By this we mean that the parties have presented differing factual perspectives on the relevant issues as to whether plaintiff made, prior to the running of the § 6511 statute of limitations, a valid formal or informal claim for refund. As a factual attack on jurisdiction, we are not required to, and thus do not, consider plaintiff's allegations as true for purposes of the defendant's motion. *Cf. Mortensen v. First Federal Savings and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977); *Williamson v. Tucker,* 645 F.2d 404 (5th Cir.1981). Rather, we are obliged to look beyond the pleadings and decide *for ourselves* those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's motion. We are constrained to so proceed because "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Cf. Mortensen,* 549 F.2d at 891; *Williamson,* 645 F.2d at 404; *DeLancie v. Birr, Wilson & Co.,* 648 F.2d 1255, 1258 n. 3 (9th Cir.1981); *Eaton v. Dorchester Development, Inc.,* 692 F.2d 727 (11th Cir.1982); *Exchange National Bank of Chicago v. Touche Ross & Co.,* 544 F.2d 1126 (2d Cir.1976); *Prakash v. American University, et al.,* 727 F.2d 1174, 1179 (D.C.Cir.1984); *Grafon Corp. v. Hausermann,* 602 F.2d 781 (7th Cir.1979). *See also McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 185, 189, 56 S.Ct. 780, 783, 785, 80 L.Ed. 1135 (1936).

known "informal" claim doctrine articulated *infra*, we hereby deny defendant's motion (converted and treated herein as a motion to dismiss), grant plaintiff's motion for summary judgment, and enter judgment for the plaintiff according to the amount of overpayment for 1974 voluntarily stipulated to by the parties.

## II. *Findings of Fact Re Jurisdiction*

Wall Industries, Inc. (Wall) is a privately-owned Delaware corporation engaged in the business of manufacturing natural fiber, synthetic rope and cordage. During the taxable years in issue (1974 and 1977), Wall maintained its books and records on the accrual method of accounting and filed its corporate income tax returns on the calendar year basis (December 31).

The genesis of this case stems from a series of income tax audits of Wall's 1973 through 1976 and 1978 income tax returns (and inspection of its 1977 and 1979 returns) conducted by the IRS over the period 1974 through 1981.[6] The returns for these years were all filed with the Internal Revenue Service Center in Holtsville, New York. For purposes of this case, because the operative taxable years are 1974, *i.e.*, the carryback year, and 1977, *i.e.*, the loss year, we note and find that said corporate returns were so filed on August 15, 1975, and September 15, 1978, respectively. The Service's audit of plaintiff's 1973 and 1974 returns was originally undertaken by Revenue Agent Ed Kraszewski who it appears filed an initial audit report for those years on July 12, 1976.[7] Thereafter, Kraszewski was replaced by the principal revenue agent involved with this case, Myron Kernis, who completed not only a supplement to the 1973 and 1974 audit, but also initiated and conducted the complete audit of

Wall's 1975, 1976 and 1978 income tax returns.

Agent Kernis' examination of the 1973, 1974, 1975 and 1976 taxable years resulted in a unitary revenue agent's report (RAR) filed on July 31, 1978, in which an overpayment for the taxable year 1973 was determined based on the agent's carryback of a 1976 NOL, and, in addition, deficiencies were assessed for 1974 and 1975 in the amounts of $93,846.49 and $32,266.00, respectively. The overassessment determined for 1973 aggregated $203,044.37, plus interest, which when netted against the total two-year deficiency of $126,112.49 plus interest, resulted in a net refund for the plaintiff of $67,221.80, including interest.[8] The issuance of this net refund regarding taxable year 1973, simultaneously representing the payment of plaintiff's deficiencies for 1974 and 1975, was made by check dated July 25, 1979.[9] That check was paid on August 13, 1979.[10]

In effecting the carryback to taxable year 1973 from a 1976 NOL and processing the foregoing associated refund, the IRS so acted even though the plaintiff had not, nor has it ever, filed an amended return for 1973 (Form 1120X claim for refund), or any other formal claim for refund (such as a Form 843). In connection therewith, Agent Kernis explained in his deposition that this self-initiated carryback (by IRS) was *his* "responsibility," regardless of whether a claim for refund was filed, whenever he was in the process of conducting an audit which "simultaneously" covered both the year of the loss (1976) and the year of the carryback (1973).[11] Contrasting the agent's explanation of his decision to *self*-initiate the 1976 carryback and refund for 1973, the record is in dispute over whether plaintiff also orally and informally requested that Kernis process the 1976 NOL carryback to the associated 1973 carryback

6. Plaintiff's Complaint at 4.

7. Plaintiff's Complaint at 5; Plaintiff's Appendix (PApp) at 177.

8. PApp at 11; Plaintiff's Complaint at 5.

9. Plaintiff's Complaint at 5; PApp at 150.

10. Defendant's Answer at 3.

11. Defendant's Appendix (DApp) at 57, 59, 66–67; PApp at 193–94.

year.[12] While Kernis agrees that *he* told plaintiff that he would process the 1976 NOL carryback to the 1973 carryback year, we find no sworn statement by the plaintiff that Kernis was *asked* to do so. Thus, we adopt Kernis' sworn statement that he was *not asked by anyone* associated with plaintiff to make the NOL carryback from 1976 and process the refund for 1973, and that he effected it *sua sponte*.[13]

For the taxable year *1977*, the year during which Wall's NOL giving rise to the 1974 refund in issue here occurred, the record is unclear as to whether a return audit (as distinguished from an inspection or survey) was ever officially authorized or undertaken. Kernis states that there was neither an audit nor a "survey," and that he so informed plaintiff of such fact.[14] While allegedly no audit of Wall's 1977 income tax return took place, Kernis' deposition indisputably reveals, nevertheless, that he did in fact "look" at the 1977 return while conducting the 1978 audit between August 1980 and April 1981, because he is required to "look" at the immediate preceding (1977) and succeeding (1979) taxable years.[15] His deposition testimony avers that his "look" at the 1977 return was for the purpose of checking whether the ending 1977 inventory was the same as that listed for inventory beginning in 1978.[16] During the course of comparing inventory amounts, Kernis *admits* that for 1977 "[he] probably did see [that] there was a loss...."[17] In fact, in defendant's cross-motion for summary judgment, it admitted that, during the audit of plaintiff's 1978

return, Agent Kernis "became aware that plaintiff had net operating losses for 1977 and 1978, and that plaintiff intended to seek to have those losses carried back as provided by law."[18]

In addition, Kernis acknowledged and admitted that he specifically requested permission from his immediate superior (which was approved) *not* to audit Wall's 1977 return because the loss "was too large to be materially reduced," so that to conduct the audit would be a waste of the "government's time."[19] According to Kernis, his decision not to audit the 1977 return was based on his belief that it did not appear that the $701,694 NOL deduction could be overcome, and even if so, it was not likely that substantial tax deficiencies could be determined through an audit so as to make his audit time worthwhile.[20] Because of such circumstance, Kernis concluded that it would be "a complete waste of Government time" to audit 1977 and carry that NOL back to 1973. However Agent Kernis arrived at this "decision" to *seek* authorization *not* to audit Wall's 1977 return, at some point, the words "Audit Return Charge Out" were in fact written on a memorandum attached to the IRS copy of Wall's 1977 return dated February 5, 1979.[21] Also attached to the IRS copy of the 1977 return is a worksheet labelled "1974 1699" and dated February 16, 1979, which proclaims under a heading entitled "Remarks:" "We can not find a NOL on the claim."[22] We also note that the filed 1977 return had been previously stamped

---

**12.** In support of this contention are PApp at 29–30; Plaintiff's Complaint at 4–5; however, at PApp at 192, Kernis responds negatively to the question: "You do not recall yourself having anyone orally asking you to do that?"

**13.** We note this is clearly the appropriate finding as unsupported allegations are not sufficient to dispute sworn statements. *See Jechura v. United States*, 9 Cl.Ct. 753, 754 (April 6, 1986); *Walker v. United States*, 428 F.2d 1229, 1231, 192 Ct.Cl. 805 (1970); *Royal Indemnity Co. v. United States*, 371 F.2d 462, 465, 178 Ct.Cl. 46, cert. denied, 389 U.S. 833, 88 S.Ct. 33, 19 L.Ed.2d 93 (1967).

**14.** DApp at 40, 45, 47–48.

**15.** DApp at 42–43, 47–48.

**16.** DApp at 42–43, 48.

**17.** DApp at 48.

**18.** DXMSJ at 4.

**19.** DApp at 47, 65.

**20.** *Id.*

**21.** PApp at 39.

**22.** PApp at 36.

"Accepted as Filed" with a stamp date of January 11, 1979.[23]

Within the working papers relating to the 1978 audit of Agent Kernis, which audit occurred over the period September 22, 1980 through March 9, 1981, there also appear numerous informative references to Wall's 1977 NOL and the associated carryback and refund. Time wise, however, each of said references we adopt herein is based on *information* which we believe the record clearly supports came to the attention of Agent Kernis *prior* to March 15, 1981. As discussed *infra,* given that the appropriate limitations period for plaintiff's informal claim expired on March 15, 1981, plaintiff's burden to establish an efficacious informal claim must be fulfilled based on facts and circumstances *noticed* to the IRS *prior* to that date.[24] By the same token, as noted *infra,* we find it wholly consistent to simultaneously make reference to the April 9, 1981 RAR for 1978—so long as the information *recorded* in that report is traceable to documents and/or conversations noticed to the IRS *prior* to March 15, 1981.

From our review of the 1978 audit records, including Agent Kernis' deposition testimony, it is indisputable and admitted that Agent Kernis saw, and had in his possession, *prior* to March 15, 1981, a copy of Wall's 1977 corporate income tax return on Form 1120, and a copy of the certified financial statement for Wall Industries for the calendar year ended 1977–78.[25] In Schedule L attached to plaintiff's 1977 return (line 5), there is asserted as "Federal Income Tax Receivables" an item in the amount of $439,771.76.[26] A similar schedule also appears with the 1978 return, on a line characterized "Federal Income Tax Receivables" in the amount of $518,076.45.[27]

Similarly, in the consolidated 1977 and 1978 balance sheet of Wall Industries, there is listed under the heading "Current Assets" an item entitled "Income taxes refundable (Note 8)" in the amount of $498,691 for 1978 and $437,095 for 1977.[28] In the accompanying notes, Note 8, entitled "Federal income taxes," states:

> Income taxes recoverable result from the carryback of net operating losses of 1978, 1977 and 1976 to years when federal income taxes were paid.[29]

Finally, an analogous entry relative to income taxes recoverable also appears in the "Statement of Changes in Financial Position," with a further reference to see Note 8 to the financial statements, *supra.*

Moreover, there are numerous indirect statements which the plaintiff urges us to adopt as references to the 1977 NOL, carryback and refund for 1974. Unfortunately, given these statements do not appear to be traceable to Kernis' knowledge prior to March 15, 1981, inasmuch as they represent his *impressions* contemporaneous with the writing of the April 9, 1981 audit report for 1978, we decline to adopt these statements as relevant for purposes of this case.

Also pertinent to the jurisdictional issue we have been directed to various meetings/conferences, alleged to have taken place between Agent Kernis and the controller of Wall Industries, Norman G. Johnston, as the bases of further findings of probative jurisdictional facts. The conversations allegedly taking place during these conferences occurred over the period of the 1978 audit, *i.e.,* between September 22, 1980 and, for our purposes, March 15, 1981, at the Wall offices. The most crucial of these conversations allegedly occurred in December of 1980 according to Agent Kernis.[30] The nature of that alleged conversa-

**23.** DApp at 5.

**24.** *See infra* text at notes 83–85.

**25.** DApp at 40, 42–43, 47–48, 56; PApp at 138.

**26.** Plaintiff's Motion for Summary Judgment (PMSJ) at 10; PApp at 124–125.

**27.** PMSJ at 10; PApp at 49.

**28.** PApp at 76.

**29.** PApp at 85.

**30.** DApp at 46.

tion was a discussion of the need for Wall Industries to file a Form 1120X amended return (formal refund claim) if it wished to obtain a refund for the 1977 NOL carryback.[31]

According to Johnston, during the audit of Wall's 1978 return, he discussed refunds regarding the 1977 and 1978 NOLs with Kernis. Johnston's version of the conversation resulted in an agreement or understanding with Kernis that Wall did *not* need to file a Form 1120X to receive a refund of the 1974 taxes relative to the 1977 NOL *until* an unrelated then-pending tax court case had been settled. After such settlement, Johnston stated, it was understood that Wall would file for a refund on Form 1120X.[32] Prior to the tax court settlement, however, Johnston understood that Kernis would process any carrybacks or refunds regarding 1977 and 1978 as that was his "function."[33] Agent Kernis admitted that Mr. Johnston, in the latter part of 1980, "told me when I was doing the 1978 return that we have a loss in 1977 and asked me am I going to examine 1977."[34] However, his recollection is that he expressly told Johnston "no" in that he would not process any refund claim for 1974 relative to the 1977 NOL carryback, and that Johnston "could" go ahead and file for Wall himself—"I didn't say you have to file [a] claim. I said if you desire to file claim, go ahead and do so."[35] While this conflicting record presents few clues as to the ultimate veracity of either version, we believe, as discussed *infra*, that even assuming *arguendo* the defendant's version as true, it does not compel a change of the ultimate results we have reached considering the *totality* of the peculiar facts and circumstances in this case implicit in our factual findings, *infra*.

Kernis' deposition testimony also brings to light several other operative facts and circumstances which we believe are probative findings. The first relates to Agent Kernis' understanding relative to the revelation—"Federal Income Tax Receivables" —listed on schedules to both the 1977 and 1978 returns. In response to repeated questioning as to the meaning of this disclosure Kernis (1) agrees that it signifies that "the taxpayer expects some taxes to be refunded";[36] (2) states that "Yes, he [plaintiff] expects money back. From what year, I don't know";[37] (3) states that "I knew there were losses in 1977 and 1978 ... but we were not going to do anything";[38] and (4) states that "I knew there were monies."[39] It is significant to observe that after conceding that he knew that there were NOL losses in 1977 and 1978 and that Wall expected "money back," Kernis concluded by stating that "I told Mr. Johnston that I was not going to process any claims ..." and further "I said I wasn't going to do anything about *your claims.*" (emphasis added).[40] Also relevant are the following additional statements relative to Kernis' understanding of the analogous language concerning the income tax receivables as listed on Wall's 1977–78 consolidated financial statements. We quote here from the deposition record directly:

Q. AS A RESULT OF READING THE FINANCIAL STATEMENT THERE, IS IT FAIR TO SAY THAT YOU CLEARLY KNEW THAT THE TAXPAYER EXPECTED A REFUND FOR CARRY-BACKS RESULTING FROM THE 1978, 1977 AND 1976 CARRY-BACKS OF N.O.L.'S?

A. [KERNIS] I KNOW HE WAS EXPECTING SOMETHING. HOW HE

**31.** DApp at 44; PApp at 139.

**32.** DApp at 15–17.

**33.** *Id.*: PApp at 138–139.

**34.** DApp at 44–45; PApp at 202.

**35.** *Id.*

**36.** PApp at 206.

**37.** *Id.*

**38.** DApp at 52.

**39.** PApp at 206.

**40.** DApp at 53.

WAS GOING ABOUT TO GET IT, I WAS NOT GOING TO DO IT.

Q. YOU KNEW HE EXPECTED SOMETHING?

A. YEAH. ANYBODY THAT LOSES MONEY, I ASSUME, EXPECTS TO GET SOMETHING BACK.

Q. ABSOLUTELY. NO DOUBT ABOUT THAT. THIS RELATES TO ALL THREE YEARS, '77, '78 and '76?

A. WELL, THIS REPORT DOES, YES.[41]

Following the close of the 1978 audit in April of 1981, Kernis completed his RAR for that year which was signed by Johnston on April 9, 1981, signed by Kernis on April 10, 1981, and mailed officially to Wall on May 8, 1981.[42] That report reflected various inventory valuation and depreciation corrections, but did not result in any change in Wall's 1978 tax liability.[43] As noted *supra*, the report contained various references and explanations as to whether and how the 1977 and 1978 carrybacks should or would be made. Upon receiving, in due course, the 1978 audit report, Wall filed, on June 10, 1981, a *formal* claim for refund regarding the taxable year 1974 based on the 1977 NOL carryback.[44] This formal request for refund was summarily denied by the IRS by letter dated June 18, 1981.[45] That letter stated that the claim for the 1974 refund, based on the 1977 NOL carryback, had been denied as not timely filed.[46]

Thereafter, Wall, through its public accountant, undertook extensive administrative action seeking to reverse the denial of its claim for refund. Wall sought relief by requesting that the IRS execute a Form 872 waiver of limitations, and submitted two written petitions alleging that the *informal* claim doctrine entitled it to relief and alternatively that it was at a minimum entitled to a $93,846 refund based on the

two-year statute of limitations period contained in § 6511(a). Efforts were also made to seek relief through the Office of the Taxpayer Ombudsman. All administrative efforts failed, upon which Wall filed suit here on September 8, 1982.

### III. *Contentions of the Parties*

#### A. *Introduction*

The parties have briefed essentially three issues in attempting to resolve this case. Two of those issues, which we have elected to treat as raised pursuant to a motion to dismiss (rather than a motion for summary judgment), derive from the uncontested point of law that to be within the jurisdiction of this court plaintiff must have made a prior efficacious administrative claim for refund within the applicable statutory period of limitations. 26 U.S.C. §§ 7422, 6511 (1976). Specifically, the first and second issues ventilate the question of whether that claim was valid either as (1) a "formal" administrative claim; or (2) an "informal" administrative claim; *i.e.*, in either case, whether said claim was timely filed within one of the applicable statutory periods provided in § 6511.

The question relative to the third issue, which is also jurisdictional in nature, is whether plaintiff's assertion of its refund claim is barred by the Anti-Assignment Act because of an agreement between plaintiff and its public accountants, Arthur Young & Co.[47] The substance of that agreement apparently gives Arthur Young & Co. *complete* control over the administration of this litigation and in effect assigns certain monies, if recovered, from this refund litigation to Arthur Young in consideration of it having previously paid Wall an amount approximating its expected recovery in this case.

---

41. PApp at 217.

42. PApp at 52.

43. *Id.*

44. PApp at 88.

45. PApp at 95.

46. *Id.*

47. *See supra* note 4.

## B. *Plaintiff's "Formal" Claim Theory*

In reaching the conclusion that its June 10, 1981 formal claim on Form 1120X was a duly filed claim entitling plaintiff to the *entire* $339,844 refund requested, plaintiff relies on the two-year time limitation *period* in § 6511(a) and the limitation on *amount* provision contained in § 6511(d)(2)(A).[48] Section 6511(d)(2)(A)[49] proscribes a self-contained special limitation on *amount* provision for refund claims based on NOL carrybacks, which ostensibly places no limitation on the amount of refunds relating to NOL carrybacks to the extent of the overpayment attributable to such carryback.[50] Against this background, Wall argues that it comes within the two-year rule because it paid its $93,846 deficiency assessment for taxable year 1974 on August 13, 1979 (when that amount from its 1973 overassessment was so applied to its 1974 deficiency), and filed its formal claim for refund on June 10, 1981, a total period of less than two years from and after the August 1979 payment. Under "such rule," Wall concludes, "when applied in the circumstances of an NOL carryback year," it "operates via section 6511(d)(2)(A) to open the carryback year for a timely claim for any overpaid taxes with respect to the NOL carried back to such year."[51]

In other words, Wall is arguing that instead of the normal limitation on amount provision usually applied under the two-year rule,[52] the special § 6511(d)(2)(A) provision *overrides* the limitation on amount under § 6511(b)(2)(B) in the case of an NOL carryback and proscribes *no* limitation on the amount of such refunds at all except to the extent of the amount of the over-

payment attributable to such carryback. Hence, the amount of plaintiff's formal refund claim, while based on the *two-year limitation period* of § 6511(a), is not limited to the $93,846 which was actually paid within the two-year period immediately preceding the date the formal claim was filed. Rather, plaintiff contends that the formal refund claim is *unlimited* as to the requested amount and requires the refund of the full $339,723. In support of its admittedly broad reading of the interrelationship of §§ 6511(a) and 6511(d)(2)(A), plaintiff relies on *Glaze v. United States*, 641 F.2d 339 (5th Cir.1981), and *American Radiator & Standard Sanitary Corp. v. United States*, 318 F.2d 915, 162 Ct.Cl. 106 (1963).

Defendant characterizes plaintiff's attempt to merge the time limitation *period* of § 6511(a), with the limitation on *amount* provision of § 6511(d)(2)(A), as fundamentally erroneous. According to defendant, plaintiff's suggested reading is contrary to both the legislative history of § 6511, as well as the only case apparently on point, *Nelson v. United States*, 54 A.F.T.R.2d 5355 (W.D.Tex.1984) [Available on WESTLAW, DCTU database]. Defendant argues that the time limitation period and the limitation on *amount* in §§ 6511(a) and 6511(d), respectively, are "self-contained" and only apply in conjunction with one another, *i.e.*, they may not be fragmentized. Thus defendant contends for plaintiff to claim the protection and benefits of the § 6511(d)(2)(A) limitation on *amount* provision, it must also claim concomitantly therewith the time limitation period of § 6511(d)(2)(A). The result, defendant argues, is that the amount of plaintiff's for-

---

**48.** Section 6511(a), *see supra* note 2, provides two alternative *general* limitations periods for filing administrative refund claims: a three-year period measured from the date the return was filed (*i.e.*, the "three year" rule); and a two-year period measured from the date the tax is paid relative to that particular taxable year (the "two year" rule). Limitations on the recoverable *amount* of the refund for the respective § 6511(a) periods are equal to the amounts paid by the taxpayer within the immediately preceding three or two years (plus any period for

extension regarding the three-year period) prior to the date the claim was filed.

**49.** *See supra* note 2.

**50.** *See supra* note 2.

**51.** PMSJ at 23.

**52.** Pursuant to § 6511(b)(2)(B), refunds are limited to the amounts *paid* within the two years preceding the filing of the claim. *See supra* note 2.

mal refund claim, which relies on the two-year rule, "is limited to that amount of tax paid within two years of its filing its claim for refund, *i.e.*, $93,846." [53]

## C. *Plaintiff's "Informal" Claim Theory*

Alternatively, plaintiff pursues an informal claim argument which is relatively more complex. In short, plaintiff argues that "[t]o be valid, an informal claim need only be a written document which adequately apprises the Service that a refund is sought for [a] certain year[ ]." [54] In addition, plaintiff asserts that an informal claim is to be recognized even though it does not, at the threshold, comply with traditional formal claim requirements, as long as any defects are perfected by the filing of a formal claim at a point in time before the informal claim is rejected. Whether the Service has sufficient timely notice that the plaintiff is asserting a right to a refund, based on the informal written component, plaintiff further adds, depends on an examination of "[a]ll the relevant facts and circumstances known to the government...." [55] In primary support of its position, plaintiff cites to *United States v. Kales*, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132 (1941); *American Radiator & Standard Sanitary Corp.*, 318 F.2d at 915; *Furst v. United States*, 678 F.2d 147, 230 Ct.Cl. 375 (1982); *Newton v. United States*, 163 F.Supp. 614, 143 Ct.Cl. 293 (1958).

In terms of the existence of the requisite written component, plaintiff relies on three documents, two prepared by Wall, and one prepared by Agent Kernis. They are: (1) Wall's 1977, 1978 and 1979 tax returns filed September 15, 1978, September 18, 1979, and timely in 1980, respectively, showing the amount of "Federal Income Tax Receiv-

ables" which purport to reflect the income tax refund sought and due which emanates from the NOLs; (2) Wall's consolidated financial statements for 1977 and 1978 (given to Agent Kernis prior to 1981 and during the audit of Wall's 1978 return by Mr. Johnston [56]) which contain both an entry for "Income taxes refundable (Note 8)" and the written explanation therefore in Note 8; and (3) Revenue Agent Kernis' audit report for the year 1978 which contains the verbatim explanation of Wall's 1977 NOL carryback and income taxes receivable found in Wall's 1977 and 1978 financial statements, Note 8.[57] According to plaintiff, "[t]ogether, these documents clearly apprised the Service that Wall asserted its right to the 1974 refund, the basis of the claim, and a refund amount" prior to March 15, 1981.[58]

Plaintiff also relies on a plethora of operative facts and circumstances which separately and collectively are arguably probative of the extent of the notice which can be imputed to the IRS relative to plaintiff's assertion of its claim for a refund. The most important of these are the systematic and continuous knowledge Revenue Agent Kernis acquired concerning plaintiff's business operations developed as a consequence of his audit of Wall's tax returns for the years 1973 through 1976 and 1978; [59] Kernis' inspection of copies of Wall's 1977 and 1979 income tax returns; Kernis' examination of the "written components" detailed *supra;* [60] and Kernis' admitted knowledge that he knew Wall expected a refund and was asserting a right thereto relative to its 1977 NOL.[61] In addition, plaintiff asserts that it also perfected its informal claim, before said claim was rejected, by filing the formal claim for refund on June 10, 1981.[62]

Plaintiff argues, from the foregoing, that these "undisputed facts bring Wall square-

---

53. DXMSJ at 24.

54. PMSJ at 26.

55. *Id.* at 27.

56. PApp at 138.

57. PMSJ at 27.

58. *Id.*

59. *Id.* at 28.

60. *Id.* at 29.

61. *Id.*; PApp at 202.

62. *Id.* at 31.

ly within the holding of *American Radiator*." [63] With respect to *American Radiator*, a case in which a similar informal claim was allowed, plaintiff contends that the written component there contained language that mirrors the language in the written component here in all material particulars, *i.e.*, "Estimated Refund Federal Taxes—Re: LIFO Inventory." [64] In addition, the revenue agent there, as here, had also audited and inspected a consecutive series of the taxpayer's returns, and, like here, had "reflected his understanding that the taxpayer expected the refunds in his audit report." [65] Plaintiff concludes that the Court of Claims' decision to allow the refund in *American Radiator*, based on the passage quoted below, argues strongly for the same result here:

> [P]laintiff can properly rely on the very specific knowledge gained by the revenue agent in auditing its returns for 1949 and 1950. This agent was thoroughly familiar with plaintiff's tax problems; he audited its returns for each year prior to 1949, beginning with 1940 or 1941. * * The agent's reports of his examination of the 1949 and 1950 returns plainly revealed, in computations and breakdown of items, his recognition that plaintiff *affirmatively anticipated* such refunds. Headings in both reports referred expressly to expected refunds for earlier years due to replacements in 1949....

*American Radiator*, 318 F.2d at 921 (emphasis added). Plaintiff's other cited cases, each allowing informal claims, are factually analogous to the case at bar.

Defendant's basic disagreement with plaintiff's informal claim argument is that plaintiff fails to distinguish between a circumstance where the Service merely has in its possession "information from which entitlement to a refund might be deduced,"

which is the case here, and the requisite "direct request for a refund," which burden plaintiff has failed to carry. [66] *See American Radiator*, 318 F.2d at 915, 920. According to defendant, "[t]he record ... shows no timely present demand for a refund of taxes for 1974." [67] Therefore, "with no demand for a refund ... being alleged," defendant avers, "the plaintiff has failed as a matter of law to show that a qualifying informal claim was filed...." [68]

Alternatively, defendant argues, even if an informal claim were established as having been timely filed, "the fact that the agent explicitly told plaintiff that if it wanted a refund for 1974 it *should* file a formal claim therefor nevertheless causes plaintiff's case to fail." (emphasis added).[69] In support of this conclusion, defendant relies on the case of *VDO–ARGO v. United States*, 3 Cl.Ct. 359, 362 (1983), *aff'd* (unpublished opinion) 738 F.2d 453 (Fed.Cir. 1984), and the following operative language from the Claims Court opinion:

> [W]hile an informal "claim" is sufficient to satisfy section 6511 under certain circumstances, it would be contrary to all of the well established legal precedent cited by the plaintiff if this Court held that a taxpayer could rely on the filing of an alleged informal "claim" while disregarding a specific request by the IRS for submission of a formal claim.[70]

The result, defendant concludes, should be that "the revenue agent's specific statements concerning the need for filing a formal claim preclude plaintiff's reliance on an informal claim here." [71]

### D. *Defendant's Anti-Assignment Act (AAA) Defense*

Finally, from the defendant's perspective, the AAA, which prohibits the assignment of any part of a claim against the United States or an interest in the claim,

---

**63.** *Id.* at 33.

**64.** *Id.* at 34.

**65.** *Id.*

**66.** DXMSJ at 17.

**67.** *Id.*

**68.** *Id.* at 19.

**69.** *Id.*

**70.** *Id.* at 20 *citing VDO–ARGO*, 3 Cl.Ct. at 362.

**71.** *Id.* at 20.

also operates in this case to preclude not only the assignment of plaintiff's claim, but also an action brought by the assignor, Wall, because Wall's attempted assignment makes the assignee, Arthur Young & Co., the real party in interest. Thus, defendant proclaims, "Arthur Young is ... seeking by this 'procedural contrivance' to do what it could not do directly, namely, to sue the Government in its own right based on plaintiff's claim for refund for 1974, and seek reimbursement of its attorney fees."[72] Defendant further argues that this situation "presents a variation of a type of evil sought to be avoided by the Act."[73] In support, defendant cites to the case of *United States v. Shannon*, 342 U.S. 288, 292, 72 S.Ct. 281, 284, 96 L.Ed. 321 (1952), "where a similar voluntary assignment was found to violate the Anti-Assignment Act even though the assignor was made a party to the action."[74]

Plaintiff replies to defendant's unique characterization of the AAA, by stating first that Wall's agreement with Arthur Young did *not* "assign Wall's legal right to bring a lawsuit against the United States for the refund at issue here ...."[75] Rather, according to plaintiff, the agreement simply allowed Wall to "obtain the use of funds due as tax refunds ... until Wall was able to recover such refunds through litigation."[76]

Alternatively, Wall argues that even if its agreement with Arthur Young was an attempted assignment of the claim, Wall is still *not* barred by the AAA as the very argument raised by defendant was rejected on analogous facts by the U.S. District Court in *K & R Service Co. v. United States*, 568 F.Supp. 38 (D.Mass.1983).

## IV. *Discussion*

### A. *Introduction*

We begin our analysis of the foregoing jurisdictional issues by observing that claims for federal tax refunds, such as here, generally present a four step analysis. As to the first step, there is the question whether the plaintiff has duly fulfilled the requirements of § 7422 by filing an administrative "claim" for refund. Section 7422 unequivocally states:

> *No suit* or proceeding *shall be maintained in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed ... *until a claim for refund* or credit *has been duly filed* with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

26 U.S.C. § 7422 (1976). The parties do not, nor could they, dispute this requirement. *See United States v. Felt & Tarrant Manufacturing Co.*, 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). To be "duly" filed within the meaning of § 7422, a claim must comply with the requirements of § 6511. These requirements form the second and third steps of our four part analysis. In that connection, the second step ventilates the question whether the foregoing administrative claim was filed timely within the applicable statutory period contained in § 6511. With regard to the third step, we inquire as to whether the *amount* of the refund claim asserted here exceeds the limitation on amount provision associated with the limitation period applicable to the plaintiff's administrative claim. Lastly, for our fourth criterion, we determine whether plaintiff has carried its burden of proving its entitlement to the refund requested.

Of these four indispensable steps, the fourth has already been sufficiently established by a stipulation of the parties. See note 1, *supra*. We read this stipulation, which is somewhat inartfully drafted, to

---

72. *Id.* at 26.

73. *Id.*

74. *Id.* at 25. In *Shannon*, the plaintiff was the *assignee*, and the United States and the assignor were co-defendants. *Shannon*, 342 U.S. at 289, 72 S.Ct. at 282.

75. Plaintiff's Reply Brief at 27.

76. *Id.*

establish in substance plaintiff's "entitlement" to the $339,723 refund subject to two conditions—a showing that the claim is within (1) the time limitation period and (2) the limitation on amount. Because defendant concedes that plaintiff overpaid its 1974 taxes by $339,723, provided this court has § 6511 jurisdiction to enter judgment pursuant to that entitlement, we believe there to be no further level of conflict between the parties. Moreover, defendant has asserted no counterclaim so as to in any way indicate that the parties' stipulation does not resolve the full factual merits of this case.

In view of the foregoing, our dispositive analysis, therefore, is limited only to determining whether the evidence respecting the first three questions, *supra*, fixes jurisdiction in this court, *i.e.*, (1) was a § 7422 administrative "claim" filed; (2) was it timely pursuant to § 6511; and (3) is the claim asserted in an amount greater than that which is statutorily allowable given the applicable limitation on amount. As previously discussed, plaintiff relies, alternatively, on an "informal" as well as a "formal" claim theory to support its claim for the full $339,723 refund. We discuss each of these theories in turn.

### B. *Plaintiff's "Formal" Claim Theory*

As stated *supra*, the filing of an administrative claim for refund is a jurisdictional prerequisite to a suit on the same claim in this court. § 7422. Under normal circumstances, this would have been effected for the taxpayer at bar by the filing of a Form 1120X (amended corporate income tax return). 26 C.F.R. § 301.6402–3(a)(3) (1977). It is the submission of this form, within the applicable statute of limitations, that is deemed to constitute the filing of a *formal* claim for refund. In the case at bar, plaintiff filed its Form 1120X, for the refund of 1974 taxes based on its 1977 NOL, on June 10, 1981.

■ Plaintiff's *formal* claim argument, pursuant to which it asserts its right to the full $339,723 refund, is detailed *supra*. In short, in cliaming that the entire $339,723

was the subject of an efficacious formal claim for refund, plaintiff relies on the two-year limitation *period* from § 6511(a) and the limitation on *amount* provision contained in § 6511(d)(2)(A). We believe that this mixing of the otherwise self-contained time limitation periods in § 6511(a) and limitation on amount contained in § 6511(d)(2)(A) is erroneous as a matter of law. This is so because § 6511(a) and (b) outline the general rule regarding the time limitation and the limitation on amount thereunder for filing claims, whereas the special rule relative to the time limitation and the limitation on amount in the case of NOL carrybacks is provided in § 6511(d)(2)(A). The use of the limitation on amount provision relied on by plaintiff as contained in § 6511(d)(2)(A), is circumscribed by its own terms to cases where the previous special NOL period of limitation is applied. Plaintiff, however, in its *formal* claim argument, applies the *general* two-year period on time limitation contained in § 6511(a). Because this is so, it cannot simultaneously utilize the special NOL limitation on amount provision of § 6511(d)(2)(A). Rather, where the two-year time limitation period of § 6511(a) is relied on, plaintiff's refund amount limitation is governed by § 6511(b)(2)(B) which provides that:

> the amount of the ... refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

Applying the § 6511(b)(2)(B) amount limitation properly with the time limitation of § 6511(a) (two-year rule) plaintiff would be entitled under its formal claim theory to a refund only in the total amount of $93,-846.49.

■ This view, as argued by defendant, is supported by both *Nelson v. United States*, 54 A.F.T.R.2d 5355 (W.D.Tex.1984) [Available on WESTLAW, DCTU database], and the legislative history of § 6511(d)(2)(A). In the *Nelson* case, the same argument relative to the mixing of the § 6511(a) period of time limitation, with the § 6511(d)(2)(A) limitation on amount

provision, was rejected as erroneous by the United States District Court for the Western District of Texas. While we are not bound by the *Nelson* court's determination, we find it to be supportive of our construction of the statute at issue herein. Likewise, the legislative history of § 6511(d)(2)(A) soundly supports the defendant's position that § 6511(d)(2)(A) was intended by Congress to be self-contained and does not impact on any other periods of limitation within § 6511(a). This view is expressly supported by the House Report on the bill which enacted § 6511(d)(2)(A), as it states:

> In the case of such a claim [under the 39 month, 15 day NOL rule], that portion of the overpayment which is attributable to a carry-back may be credited or refunded without regard to the date of payment of tax. It is to be noted that the period provided in section 322(b)(6) [39 month, 15 day period] is to be in lieu of the 3-year period provided in section 322(b)(1). *Section 322(b)(6), however, is not to affect any other period, such as the 2-year period after payment of the tax, within which under present law claim for credit or refund may be filed or credit or refund allowed and made.*

H.R.Rep. No. 849, 79th Cong., 1st Sess., at 28. We do not think Congress could have been any clearer in its directive that claims under the already existing 2-year rule were not to benefit from the newly enacted § 6511(d)(2)(A) limitation on amount provision.

In addition, our conclusion here, in construing § 6511 is well supported by binding precedent when, in this connection, *Kales* states that "[t]he word 'claim' is interpreted liberally in determining the application of statutes of limitation." *Kales*, 314 U.S. at 188, 62 S.Ct. at 216. This is particularly true, teaches *Newton*, "where the Commissioner was not misled or deceived by the failure to file a formal claim." *Newton*, 163 F.Supp. at 618. Importantly, however, as the Fifth Circuit held in *Glaze*, while "[c]ourts will strain to interpret the lan-

guage of Section 6511 allowing for refund of excess taxes paid in a way that will avoid hardship upon the taxpayer," such liability is, nevertheless, "subject . . . to the limitation that *the plain language of the section will not be ignored.*" *Glaze*, 641 F.2d at 343 (emphasis added).

■ As previously stated, the result of the above, therefore, is that plaintiff's formal claim, properly filed within the two-year rule (*i.e.*, two years from the date the $93,846 was paid on August 7, 1979), was efficacious at its date of filing, June 10, 1981, up to the amount of $93,846 as limited by § 6511(b)(2)(B). This is the proper limitation on amount relative to the § 6511(a) two-year rule, as it represents the amount of tax paid by plaintiff for 1974 within the two-year period immediately preceding the filing of the formal claim on June 10, 1981. The court observes that defendant belatedly conceded plaintiff's entitlement in its cross-motion by stating:

> [D]efendant . . . has agreed that plaintiff is entitled to recover the $93,846 . . . [premised on the fact] that a timely claim was made for that amount.[77]

As for the amount of plaintiff's claim in *excess* of the $93,846 (*i.e.*, $339,723 − $93,846 = $245,877), plaintiff's *formal* claim for refund cannot be deemed to be timely. Given the limitation on amount provision of § 6511(b) as applied *supra,* it is beyond the power of this court to make such an award pursuant to the *formal* claim for refund filed on June 10, 1981. Therefore, if plaintiff is to be entitled to a refund of any taxes in addition to the $93,846, the jurisdictional authority for such an award will have to be derived elsewhere. It is to plaintiff's alternative *informal* claim theory that we now turn to evaluate one such potential source of jurisdiction.

### C. Plaintiff's "Informal" Claim Theory

#### 1. Was A Claim Asserted?

■ In those refund actions where a plaintiff taxpayer has failed to file a timely

---

77. DXMSJ at 8.

"formal" claim for refund, this court and our predecessor court have, on occasion, seen fit to grant relief based upon the notion that certain specified events, culminating with the untimely filing of the formal claim, may constitute a valid "informal" claim sufficient to satisfy the administrative claim requirement of section 7422. *See American Radiator*, 318 F.2d at 915; *Furst*, 678 F.2d at 147; *Newton*, 163 F.Supp. at 614. It is clear beyond cavil, therefore, that the theory of the *informal* claim is a well established doctrine, recognized not only by this court and our predecessor, but by the United States Supreme Court as well. *See Kales*, 314 U.S. at 186, 62 S.Ct. at 214.

■ While viewed as an appropriate substitute for the timely filed formal claim, the informal claim is nonetheless based on the same fundamental premise that "notice" to the Commissioner must be provided that a claim for refund is being made, for a sum certain, for a particular taxable period, and occurring within the applicable statutory period. *Furst*, 678 F.2d at 151; *Newton*, 163 F.Supp. at 618. In further defining the informal claim doctrine, we note that the case law has evolved few *specific* criterion. Save for some sort of a *written component*, the cases in this court emphasize that there is no preconceived set of universal facts and circumstances which otherwise define an efficacious informal claim. *Newton*, 163 F.Supp. at 619. Rather, it is underscored that each case is to be decided on its own merits, paying particular attention to the combined effect of the unique facts and circumstances known to the government at the time the alleged informal claim is made. *Id.*

a. *Written Component*

■ We believe that under the standard articulated *supra*, the record in this case is replete with uncontested written and circumstantial evidence probative of the fact that the Commissioner was on clear and unambiguous notice that plaintiff had made an *informal* claim for a refund of 1974 taxes premised on its 1977 NOL carryback.

Beginning with the threshold requirement that there *must* be a satisfactory "written component" asserting the claim for refund, *American Radiator*, 318 F.2d at 920, we believe that this criterion is adequately satisfied by both Wall's 1977 income tax return read in conjunction with its 1978 and 1979 returns, and by the 1977–1978 consolidated financial statements of Wall Industries submitted to the IRS (Agent Kernis) during the audit of Wall's 1978 return.

First, there is the combined effect of the assertion of "Federal Income Tax Receivables" in specific amounts found on the balance sheet of *each* of plaintiff's 1977 ($439,771.76), 1978 ($518,076.45), and 1979 ($440,997.00) income tax returns. Looking at the entry on the 1977 return alone for the moment, the significance of this language, when made known to the IRS on the date Wall's return was stamped "Accepted as Filed," January 11, 1979, was undoubtedly to acknowledge and concede Wall's expectancy relative to some form of federal tax refund emanating from the carryback of the NOL. The plain meaning of these words "Federal Income Tax Receivables," which we perceive to clearly denote the assertion of a right to receive monies made up of taxes previously paid, is indisputably a claim directed at the federal government—the sole source of federal taxes paid. That this assertion appeared on the 1977 return, describing a future expectancy, we believe is most probative and supportive of the plaintiff's assertion of its claim.

In opposition, we recognize that one may argue that because 1977 was not an audit year, the extent to which the IRS reviewed this assertion is perhaps less than adequate to establish sufficient notice of the existence of a claim. While we do not find this argument persuasive, it is discredited by the fact that evidence regarding that same 1977 income tax receivable appeared on the *audited* 1978 and the inspected 1979 returns as a cumulative item. Thus, from a cumulative perspective, we, therefore, find that the 1977 receivable was reflected on those later returns (as it was undoubtedly

*not* yet paid) along with an additional carryback refund expected based on a NOL arising in 1978.

It cannot be doubted that in auditing Wall's 1978 return, the balance sheet assertion of plaintiff for "Federal Income Tax Receivables" in the amount of $518,076.45 was noted by Revenue Agent Kernis (*i.e.*, his audit report for that year admits as much). We believe this finding is inescapable inasmuch as even a casual perusal of said return would have revealed to Kernis, an experienced agent, that the *total* receivable set-up for 1978 was an amount well beyond what would be attributable solely to the NOL carryback (*i.e.*, $256,105) for 1978 alone. As a consequence, we find that by Kernis' auditing the 1978 return in late 1980 notice of the assertion of the claim for refund based on the 1977 NOL carryback was a component part of the cumulative claim listed as a receivable in the 1978 return. The same reasoning and findings apply analogously for the 1979 inspected return as well.

Were the actual returns (1977, 1978 and 1979), singularly or collectively, perceived to be insufficient written components, a conclusion to which we do not subscribe, there is the additional operative fact that Agent Kernis had in his possession in 1980 during the 1978 audit, a copy of the combined financial statements of Wall for 1977 and 1978 which were provided by plaintiff's controller, Mr. Johnston. As noted *supra*, these balance sheet statements contained entries for "Income taxes refundable (Note 8)." Incorporated therein, through the clearly referenced "Note 8" is an explanation which, unambiguously, proclaims that the sole source of this entry is "the carryback of net operating losses of 1978, 1977 and 1976 to years when federal taxes were paid." Again, based simply on the plain language of the balance sheet entry and its corresponding explanation, Kernis (*i.e.*, the IRS) was directly apprised of the plaintiff's assertion of a claim for refund based on the 1977 NOL at least in the latter part of 1980. Given the fact that Kernis audited the 1978 return, and admits his knowledge as to plaintiff's desire for the 1977 NOL carryback to be refunded, we do not find persuasive Kernis' statements that he did not fully comprehend the import of this receivable on either the 1977–78 financial statements, or the 1978 return.

Finally, although incapable itself of being a valid written component, as it is dated just beyond the March 15, 1981 limitations period, there is the 1978 RAR which clearly records information noticed to the IRS *prior* to March 15, 1981. This report, which must be deemed to represent the IRS's own record of its then current understanding as to the status of plaintiff's 1977 refund claim, manifests an unmistakable understanding that that claim for refund had been asserted to Agent Kernis and, therefore, to the IRS. The language on which we rely in the 1978 RAR is labelled "Federal Income Taxes" which, *inter alia*, states: "Income taxes recoverable result from the carryback of net operating losses of 1978, 1977 & 1976 to years when federal income taxes were paid." Implicit in these revealing words is the clear understanding of the Service that Wall was asserting a *present* right and expectation as to the future receipt of a tax refund emanating from the carryback of the net operating loss for 1977 to the earliest year when income taxes had been paid. Again, but for the fact that the Service deemed it significant to recognize plaintiff's assertion to its claim for refund regarding the 1977 NOL carryback, there is little, if any, reason for the agent to have provided such an explicit acknowledgement of said federal income taxes receivable in his report. The quoted statement upon which we rely *supra* was undeniably noticed to the IRS prior to March 15, 1981, inasmuch as it was quite obviously copied from Note 8 to the Wall 1977–78 financial statements which were in Agent Kernis' possession in late 1980.[78]

The number and detail of the various written components in this case are far more probative of a finding of an informal

---

78. PApp at 65, 85, 86, 138, 197.

claim than the number and degree of the written components which have been required by most of the informal claim cases which have preceded the plaintiff herein. For example, in the early case of *Night Hawk Leasing Co. v. United States*, 18 F.Supp. 938 (Ct.Cl.1937), the plaintiff relied successfully on a reservation of rights and a statement of payment under protest written on the back of the check used to pay the disputed liability as the informal claim's written component. That protest (*i.e.*, the written component) statement included none of the affirmative tax "receivable" or "recoverable" language found in the case at bar. Similarly, in *Cumberland Portland Cement Co. v. United States*, 104 F.Supp. 1010, 122 Ct.Cl. 580 (1952), the plaintiff relied on a letter of transmittal, accompanying an executed Form 874, which essentially requested no more than the expedited resolution and "settlement" of the return in issue as the written precursor of the untimely filed formal claim. The court there also accepted the plaintiff's informal claim, despite the fact that no claim words as explicit as, or even analogous to, "Federal Income Tax Receivables" or "Income Taxes Recoverable" appeared in the written component.

In terms of the sufficiency of words asserting a claim of right analogous to the case at bar, the facts of *American Radiator* are clearly on point. In that case, the precise claim words asserting the right in the written component, *i.e.*, a 1949 income tax return, were: "Estimated Refund Federal Taxes" and "Federal Taxes Refundable". *American Radiator*, 318 F.2d at 920. There, the predecessor Court of Claims said, referring to said assertions: "These parts of the return were sufficient to satisfy the requirement that there be a written element in the informal demand." *Id.* at 920. We find that, to the extent the operative words in the written components in the case at bar do not mirror, *in haec verba*, such words in *American Radiator*, the distinction is without a significant difference. In fact, we find that the difference in notice value between the words "refundable," "recoverable," and "receiva-

ble," when used in the context of a claim for federal taxes previously paid, is merely semantical.

Like *American Radiator*, where the claim words ("Estimated Refund Federal Taxes") also appeared on the income tax return for the year of the NOL, we are convinced that an adequate written component similarly exists in the form of the assertion reflected on plaintiff's 1977 return (as well as on its 1978 and 1979 returns). Perhaps even more probative here than was true in *American Radiator*, the operative claim words appear not only on the return for the 1977 NOL year in issue, on the consolidated financial statements for 1977 and 1978, which were given to Agent Kernis prior to March 15, 1981 during the 1978 audit, but they also appear as well *verbatim*, as noted *supra*, in the agent's audit report for 1978. Thus, against this impressive background, we do not hesitate to similarly conclude that the 1977 and 1978 financial statements, and, save for the April 9, 1981 date, perhaps even the 1978 audit report, are equally valid written components for purposes of our determination in the case at bar. That plaintiff asserted an adequate claim of right to a refund, which claim appeared in several acceptable written component(s), *supra*, is strongly supported by the uncontroverted facts proffered by the plaintiff in this case.

### b. *Facts and Circumstances*

■ Beyond the required written component, many additional facts and circumstances soundly support our conclusion that the IRS had adequate notice that an informal claim for refund was asserted by the plaintiff herein prior to March 15, 1981. In identifying the particular facts and circumstances on which we specifically rely, we are again guided by the close analogy this case presents to the facts in *American Radiator*. Of particular significance in *American Radiator*, and likewise here, is the "specific knowledge gained by the revenue agent in auditing" plaintiff's returns for the taxable years 1973, 1974, 1975, 1976, and 1978 (as well as inspecting its

1977 and 1979 returns). *American Radiator*, 318 F.2d at 921. Like the agent in *American Radiator*, Agent Kernis was "thoroughly familiar with plaintiff's tax problems...." *Id.* Kernis' entire audit experience relative to Wall spanned some six years (excluding an interim two year, 1978–1980, gap), and encompassed audit authority for five different returns including the returns for the years *both preceding* and *following* the year in issue, *i.e.*, 1977. Also pertinent to the standard delineated in *American Radiator*, after Kernis completed his audit of 1976, the preceding taxable year, is his request and determination (after review) *not* to audit the year in issue, 1977.

The record is also replete with the deposition testimony of Agent Kernis that he *knew* Wall expected a tax refund based on the 1977 NOL carryback. Whether he (Kernis) was going to process said NOL carryback, or whether it was even processible due to the aforementioned then-existing tax court litigation, does not vitiate or discount this admitted knowledge of Agent Kernis. The relevant NOLs and balance sheet tax receivables were clearly designated on the returns for the years 1976, 1977, and 1978, each of which were admittedly known to Kernis. Not only were the NOLs apparent, but it is equally clear to this court that the fact that Wall desired the associated carryback and related refund was also evident on each written component. Therefore, like *American Radiator*, not only was the basis (*i.e.*, year and amount) of the claim *factually* within the agent's knowledge, but the precise *legal* ground upon which the prospective refund was premised was also presented to and understood by the agent (IRS). We believe Kernis' deposition testimony clearly supports these findings.

We also cannot stress enough the fact that both in deposition testimony and through his copying Note 8 of the Wall financial statements into his 1978 RAR,

Kernis admits quite candidly that he knew a refund based on the 1977 NOL was contemplated by Wall. In particular, as stated *supra*, Kernis states three times in relation to the taxes receivable balance sheet entry on the 1977 and 1978 returns that these entries indicated to him that Wall expected to get some taxes refunded. This knowledge is again ventilated by certain deposition questions put to Kernis relative to his review of the 1977 and 1978 financial statements. In that context, we again refer to the precise testimony of *Kernis* as quoted below:

Q. AS A RESULT OF READING THE FINANCIAL STATEMENT THERE, IS IT FAIR TO SAY THAT YOU CLEARLY KNEW THAT THE TAXPAYER EXPECTED A REFUND FOR CARRYBACKS RESULTING FROM THE 1978, 1977 AND 1976 CARRY-BACKS OF N.O.L.'S?

A. [KERNIS] I KNOW HE WAS EXPECTING SOMETHING. HOW HE WAS GOING ABOUT TO GET IT, I WAS NOT GOING TO DO IT.

Q. YOU KNEW HE EXPECTED SOMETHING?

A. YEAH. ANYBODY THAT LOSES MONEY, I ASSUME, EXPECTS TO GET SOMETHING BACK.

Q. ABSOLUTELY. NO DOUBT ABOUT THAT. THIS RELATES TO ALL THREE YEARS, '77, '78 and '76?

A. WELL, THIS REPORT DOES, YES.[79]

Despite Kernis' obvious attempt to mask, if not avoid, the clear import of his apparent knowledge, we believe this testimony is highly revealing and probative of Kernis' (*i.e.*, the Service's) then-existing knowledge.[80]

Lastly, were there any confusion remaining as to the state of Kernis' knowledge relative to the 1977 NOL carryback and refund, the verbatim copying by Kernis of Note 8 to Wall's 1977 and 1978 financial

---

79. PApp at 217.

80. By "then-existing," we place the date, as discussed from Kernis' deposition testimony, to be

during the audit of the 1978 return, *i.e.*, 1980, early 1981. *See* PApp at 216–17.

statements into the 1978 audit report puts that remaining doubt to rest. Note 8, found *word-for-word* in the 1978 audit report, under the *specific heading* "Federal Income Taxes," states: "Income taxes recoverable result from the carryback of net operating losses of 1978, 1977 & 1976...." These words speak for themselves relative to what Kernis *in fact* did or did not know about the 1977 NOL carryback and refund. The same degree of knowledge by the agent in *American Radiator* was noted with particularity by the Court of Claims in finding the requisite notice on behalf of the IRS; likewise we find the facts detailed *supra* equally persuasive in favor of the plaintiff here.

Though not a primary basis for our decision herein, but nonetheless supportive thereof, are the unique facts and circumstances of this case, unlike *American Radiator*, surrounding Agent Kernis' decision *not* to audit the 1977 return. Of particular import is the fact that from *all* the available objective evidence, it appears that Agent Kernis made the decision *not* to audit the 1977 return at a time when he was aware of the plaintiff's desire to receive a refund relative to the 1977 NOL carryback to 1974.[81] While we conjure *no* allegations of bad faith on behalf of Agent Kernis in his decision *not* to audit the 1977 return, we believe that because of the peculiar facts herein, fairness supports relief in this case. This is so because the facts clearly indicate that Kernis *intentionally* sought to avoid an audit of Wall's 1977 return and his having to process the 1977 NOL carryback by affirmatively seeking authority *not* to audit the 1977 return. Were the decision not to audit the 1977 return a routine one, made *out* of the scope of Kernis' previous NOL carryback for 1976, and *out* of the scope of his knowledge relative to Wall's similar expectations vis-a-vis the 1977 return, we would hesitate to construe any significance from the cir-

cumstances surrounding the decision not to audit Wall's 1977 return. However, when one considers that the most vocally contested factual issue in this case surrounds the question whether Wall was *told* that Kernis would *not* process the 1977 carryback, or whether Wall was accurate in "understanding," based on conversations with Kernis, that he would process the 1977 carryback, Kernis' *contemporaneous actions*, and the reasonable inferences therefrom, cannot in fairness be ignored.

■ In reaching our decision in the case at bar, we have not been unmindful of defendant's repeated assertions that the opposite result to that which we reach here is compelled by the Claims Court case of *VDO-ARGO v. United States*, 3 Cl.Ct. 359, 362 (1983), *aff'd* (unpublished decision) 738 F.2d 453 (Fed.Cir.1984). In this regard, we note preliminarily that to the extent defendant cites to said case as precedent binding on this court, defendant's reliance is misplaced. We remind defendant's counsel of the explicit words clearly affixed to the slip opinion in that case by the Federal Circuit: This case "is not citable as precedent." This means, undoubtedly, that the *result* affirmed in that case is binding only on the parties therein, but it is *expressly* limited so as *not* to be precedential for future litigants, whatever the facts. This, of course, is not to be confused with the remaining implications of the case as *Claims Court* precedent to the extent it is persuasive for purposes of our deciding the case herein. With the foregoing clarification, we also believe that the facts of that case, as ably found by Judge Yock, are readily and dispositively distinguishable from the case at bar; thus, we respectfully decline to follow *VDO-ARGO*.

In *VDO-ARGO*, plaintiff's informal refund claims for 1974, 1975 and 1976 were rejected by the Claims Court for a variety of reasons. Two, in particular, are cited by

---

**81.** We reach this conclusion because Kernis' decision *not* to audit 1977 was made *while* he was reviewing the 1977 return relative to inventory amounts vis-a-vis 1978. *See* DApp at 48. This fact is corroborated inasmuch as Kernis states

that he reviewed *no* Wall records over the period 1978–1980, PApp at 180, DApp at 40; reviewed the 1978 return starting in 1980, PApp at 180; and *only* reviewed the 1977 return for purposes of the 1978 audit, DApp at 40–41, 43.

Judge Yock. First, the written-component basis of the informal claims was the filing of Form 1139, Corporate Application for Tentative Refund, *VDO–ARGO*, 3 Cl.Ct. at 361–62, and an explanation of the associated refunds appearing in amended returns for three years *other than* the years for which refunds were being litigated (1971–1973). *Id.* That Form 1139 which was blatantly inadequate was eventually so conceded by the plaintiff in view of the fact that related Treasury regulations provide that "[a]n application for a tentative carryback adjustment does *not* constitute a claim for credit or refund...." *Id. quoting* 26 C.F.R. § 1.6411–1(b)(2). Shortly after Form 1139 and amended returns for unrelated years (1971–1973) were received by the IRS, a *reply letter* was sent to plaintiff *specifically requesting* that *VDO–ARGO* file appropriate amended returns for 1974, 1975, and 1976. Following this *specific written* request by the IRS for the filing of formal claims for refund, and prior to the time the statute of limitations expired (a period of some 14 months), plaintiff failed to file the amended returns in direct contravention of the IRS directive. *Id.* It was upon these peculiar circumstances that Judge Yock stated the following passage which is relied on by defendant exclusively to overcome plaintiff's informal claim:

> Therefore, while an informal "claim" is sufficient to satisfy section 6511 under certain circumstances, it would be contrary to all of the well established legal precedent ... if this Court held that a taxpayer could rely on the filing of an alleged informal "claim" *while disregarding a specific request by the IRS for submission of a formal claim.*

*Id.* at 362 (emphasis added).

In contrast to the facts in *VDO–ARGO*, the basis of the plaintiff's claim here that an informal claim was timely asserted is not an admittedly tortuous combination of indirect references to written non-viable components. Rather plaintiff here proffers its actual 1977, 1978 and 1979 income tax returns, the first-hand exposure of Agent Kernis to Wall's 1977 and 1978 financial statements (balance sheet receivables), and the very text of an audit report of the auditing agent himself—each of which contains explicit words asserting a right to a tax refund, relating to the specific year in issue (which data came to the attention of Kernis prior to March 15, 1981). Moreover, in the case at bar, and unlike *VDO–ARGO*, no *formal* request was ever made of Wall to *in fact* file an appropriate amended return. In the case at bar, Agent Kernis himself gave deposition testimony which indicates that he was uncertain as to exactly what he told Wall, regarding the filing of a claim for refund for its 1977 taxable year. For example, consider the following: "I *probably* told Mr. Johnston ... that if you desire to file claims, go ahead and do so"; and "*I didn't say you have to file claim.* I said if you desire to file claim, go ahead and do so." (emphasis added). When the foregoing representations are taken in context with the conflicting testimony of Mr. Johnston, to the effect that at the same time he and Kernis had an "understanding" that Kernis *would* process the 1977 refund, any analogy to the undisputed *written request* to affirmatively file a formal amended return as in *VDO–ARGO* must fail.[82]

Second, and of paramount significance in *VDO–ARGO*, the court there also concluded that plaintiff had not fulfilled the requirement of a *satisfactory written component* (we believe this fact alone was suf-

---

82. We are also firmly of the opinion that even if Agent Kernis' precise words were as stated, and those of Mr. Johnston were false, in the context of the apparent uncertainty and the vague generality as expressed, they amount to no more than an informal suggestion. Against this background, we simply cannot accept the proposition that the conversational statement by Kernis that Wall could "go ahead and file" is tantamount to what Judge Yock called "a specific request by the IRS for submission of a formal claim." *VDO–ARGO*, 3 Cl.Ct. at 362. We believe it is precisely the *formal* character of the IRS request which vitiates any reasonable reliance *VDO–ARGO* could have had based on its previously filed informal claim. An unequivocal *formal* request of that character is not present in the case at bar.

ficient to support the court's finding there). *Id.* at 362. Specifically, Judge Yock states in that connection that:

> The documents relied upon by the plaintiff (*i.e.*, the amended income tax returns for 1971, 1972 and 1973 [the aforementioned unrelated years]) neither contain any assertions by the plaintiff that its tax was overpaid for the years 1974, 1975 and 1976, nor do they contain demands for a refund of tax paid for the years 1974, 1975 and 1976.

*Id.* As stated repeatedly in this opinion, specific assertive words indicating a claim —"Refundable," "Recoverable" and "Receivable"—appear throughout the 1977, 1978 and 1979 returns, the 1977 and 1978 consolidated financial statements, and Agent Kernis' audit report for 1978. They relate to the year currently in issue, 1977, and, contrary to *VDO–ARGO*, singularly and collectively signify the clear assertion of a right to a refund.

In addition to the existence of the circumstances described *supra*, which circumstances because they were *lacking* in *VDO–ARGO* caused that suit to be dismissed, there is also the important fact that Agent Kernis had specific knowledge of Wall's business due to the audit of five return years, including the year preceding and the year subsequent to that forming the basis of the refund claim in this case. The precise knowledge of the IRS (vis-a-vis Agent Kernis) in the case at bar is, therefore, not premised on the indirect documentary references relied on by plaintiff in *VDO–ARGO*. Agent Kernis' deposition admittedly establishes that he knew Wall was expecting a refund for the 1977 NOL carryback to 1974. This *amplification* of the clear written component is a significant circumstance upon which we rely to remove this case from the parameters of *VDO– ARGO*. In short, given the litany of operative factual differences between *VDO– ARGO* and the case at bar, in applying the totality-of-the-circumstances approach as we must, *Kuehn v. United States*, 480 F.2d 1319, 1320, 202 Ct.Cl. 473 (1973); *Newton*, 163 F.Supp. at 619, we respectfully decline to follow *VDO–ARGO* as a basis for dismissing the plaintiff's petition herein.

### 2. *Was The "Informal" Claim Timely Filed?*

As detailed at the outset, there are two additional questions which must also be resolved in favor of the plaintiff, in addition to establishing the existence of an informal claim, before jurisdiction may be found to be proper in this refund suit. The second of these is whether the informal claim, as constituted from the facts and circumstances discussed *supra*, was timely filed within the applicable statute of limitations contained in § 6511. Plaintiff here relies on the 38-month, 15-day period of § 6511(d)(2)(A) as the appropriate statute of limitations which provides as follows:

> (d) *Special rules applicable to income taxes.—*
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (2) *Special period of limitation with respect to net operating loss or capital loss carrybacks.—*
>
> (A) *Period of limitation. —If the claim for* credit or *refund relates to* an *overpayment* attributable to a *net operating loss carryback ... in lieu of the 3-year period of limitation prescribed in subsection (a)*, the period shall be that period which ends with the expiration of the 15th day of the 40th month (or the 39th month, in the case of a corporation) following the end of the taxable year of the net operating loss ... which results in such carryback, or the period prescribed in subsection (c) in respect to such taxable year, whichever expires later; except that—
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> In the case of such a claim, *the amount of the* credit or *refund may exceed* the portion of the tax paid within the period provided in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to such carryback. (emphasis added).

§ 6511(d)(2)(A). We agree that this section applies and provides the time limitation pe-

riod "with respect to net operating loss ... carryback(s)." *Id.* § 6511(d)(2).

 Pursuant to § 6511(d)(2)(A), the starting date of the time limitations period is the "end of the taxable year of the net operating loss ... which results in such carryback ...." *Id.* § 6511(d)(2)(A). Calculating from this period, therefore, from December 31, 1977, any claim under the three-year rule (formal or informal) emanating from a 1977 NOL must be filed on or before the 15th day of the 39th month following the end of the loss year—in this case—March 15, 1981. Plaintiff alleges that its informal claim was filed on March 12, 1980, and perfected by the filing of the formal claim on June 10, 1981.[83] Because of the component nature of what constitutes an informal claim, however, we do not deem it necessary to rely on any particular date.[84] Rather, inasmuch as the operative written component(s) as well as all the facts and circumstances upon which we rely to establish the informal claim occurred and were noticed to the Service *prior to March 15, 1981*, it is safe to say that upon any scenario, the informal claim was timely made.[85] Regarding the filing of the formal claim on June 10, 1981, the case law is clear that the date of this filing, when treated as an embellishment to the informal claim, relates back to the date the informal claim was filed. *See Rosengarten v. United States*, 181 F.Supp. 275, 279 (Ct. Cl.1960).

### 3. *Is The Claim Asserted Here Greater In Amount Than That Which Is Statutorily Allowed?*

Our final inquiry relative to jurisdiction over this refund action is whether any part of the claim as stated violates the limitation on amount provision of § 6511. Here, the special time limitation period provisions found in § 6511(d)(2)(A) apply because the claim is premised on plaintiff's NOL carryback. Because of this fact, the corresponding special limitation on *amount* provision contained in § 6511(d)(2)(A) (*i.e.,* the last sentence thereof) is applicable here, and states as follows:

> [T]he amount of the credit or refund may exceed the portion of the tax paid within the period provided in subsection (b)(2) or (c), whichever is applicable, to the extent of the amount of the overpayment attributable to such carryback.

§ 6511(d)(2)(A).

 Subsection (d)(2)(A) provides that in the case of a NOL carryback the amount of the refund may *exceed* the portion of the tax paid within the period provided in subsection (b)(2) or (c), whichever is applicable, but not to exceed the overpayment attributable to the carryback. The period provided in subsection (b)(2) is the three-year five-month period preceding and running from March 12, 1980, back to October 12, 1976. The only 1974 taxes paid by Wall within this period was the $93,846 additional assessment which was paid on August 7, 1979. Since, in essence, this section makes clear that as long as the refund is based solely on a NOL carryback, as it is here:

> the ... refund may exceed the portion of the tax paid [*i.e.,* the $93,846] within the period provided in subsection (b)(2) ... to the extent of the amount of the overpayment attributable to such carryback.

---

**83.** Plaintiff's Complaint at 2; PApp at 136.

**84.** We believe that *Newton* supports this approach where the court refers to the general development of "notice" as the purpose of having a limitation period, which general notice, whenever it occurs, is efficacious so long as it is given within the time period required. *Newton,* 163 F.Supp. at 618.

**85.** As stated throughout, we adopt as written components for purposes of this case the Wall 1977 income tax return (read in conjunction with those for 1978 and 1979) and the Wall 1977–78 consolidated financial statements. While the 1978 RAR is substantively sufficient as an additional written component, because it is dated (April 10, 1981) *beyond* the statute of limitations date (March 15, 1981), it cannot technically serve as an efficacious notice of claim. However, in conjunction with all those other facts and circumstances which we have carefully isolated, each occurring prior to March 15, 1981, it is undoubtedly a clear indication of what the IRS believed to be the status of the 1977 NOL refund claim.

The overpayment attributable to the carryback is $339,723, all of which amount we find plaintiff to be entitled.[86] Therefore, in contrast to the limit of $93,846 imposed on plaintiff's *formal* claim, pursuant to plaintiff's efficacious *informal* claim, this court possesses jurisdiction to award plaintiff *simultaneously* its full claim, up to the $339,723 requested amount.

### D. *Defendant's Anti-Assignment Act Defense*

 Defendant's argument that the AAA is a bar to the assertion of the plaintiff's claim appears not to be well founded. It avers that the AAA should operate in this case to not only preclude the assignment of plaintiff's claim, but to preclude an action brought by Wall, the assignor, because Wall's otherwise invalid assignment makes the assignee, Arthur Young & Co., the real party in interest. Defendant claims this is a form of "procedural contrivance" that is a "variation of a type of evil sought to be avoided by the Act." Quite simply, defendant is literally arguing that tails I win and heads you lose. Either the AAA bars any assignment, thus leaving the claim with Wall, or the AAA does not bar the assignment, in which case Arthur Young, depending on the substance of the agreement, might be the real party in interest. However, the AAA cannot be seen to essentially vitiate the claim and concomitantly *void* the assignment, with the result that the remaining claim is *unenforceable* by the assignor as well.

Plaintiff's citation of authority in this regard is on point. In this connection, we believe our predecessor court, as far back as 1960, settled this issue when it stated in the case of *Colonial Navigation Co. v. United States*, 181 F.Supp. 237, 149 Ct.Cl. 242 (1960) that:

> [A]n attempted assignment of a claim against the United States does not forfeit the claim. *It leaves the claim where it was before the purported assignment [i.e., with the assignor].*

*Id.* at 247. Similarly on point is the case of *K & R Service Co. v. United States*, 568 F.Supp. 38 (D.Mass.1983), where the identical argument of the defendant was rejected by the U.S. District Court:

> "The effect of the statute is upon the assignment, not upon the claim. The assignor can still bring suit." [citations omitted] The government's position would create the untenable situation in which the assignment of a tax claim against the United States would effectively preclude all parties from seeking enforcement thereof.

*Id.* at 40. What this statute means in the context of this case is that whether Wall did, or did not, attempt an assignment, only Wall has the right to bring suit against the United States to recover such taxes as *it* alleges that *it* erroneously paid. That is precisely what it did.

### V. *Conclusion*

 In sum, considering all the facts and circumstances known to the government prior to the time the appropriate statute of limitations expired, we conclude that plaintiff had fulfilled the requirement that an administrative claim for refund be "duly filed." This was done through the assertion of an efficacious informal claim (and in part a formal claim). Those claims being within the § 6511 applicable limitation on amount, we hereby find that this court has jurisdiction to decide the merits of plaintiff's claim for refund of 1974 taxes based on its 1977 NOL.

Whereas the parties have voluntarily stipulated that the alleged overpayment of 1974 taxes in the amount of $339,723, plus interest, in fact occurred, we enter judgment for the plaintiff accordingly. Defendant's motion for summary judgment, treated by the court as a motion to dismiss, is denied. Plaintiff's motion for summary judgment, given the foregoing, is granted.

---

**86.** This is consistent with relevant legislative history which provides that "In the case of such a claim, that portion of the overpayment which is attributable to a carryback may be ... refunded without regard to the date of payment of the tax." H.R. Rep. No. 849, 79th Cong., 1st Sess. at 28, 30 (1945).

The Clerk shall enter judgment for the plaintiff in the sum of $339,723, plus appropriate interest. No costs shall be assessed.

IT IS SO ORDERED.